Julian **DIAZ**, Plaintiff–Appellant,

v.

**Shirley S. CHATER, Commissioner of Social Security,\* Defendant–Appellee.**

No. 94–2763.

United States Court of Appeals, Seventh Circuit.

Argued April 25, 1995.

Decided May 24, 1995.

---

\* Pursuant to Federal Rule of Appellate Procedure 43(c) and Pub.L. No. 103–296, Shirley S. Chater is substituted as the named defendant-appellee for Donna E. Shalala.

302

Frederick J. Daley, Marcie E. Goldbloom, Chicago, IL, Edward J. Lonergan, Boston, MA (argued), for Julian Diaz.

Michael C. Messer, Dept. of Health and Human Services, Region V, Office of Gen. Counsel, Chicago, IL (argued), for Shirley S. Chater.

Before FLAUM, RIPPLE and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

Julian Diaz appeals from the district court's order upholding the denial of his applications for disability insurance benefits (DIB) and supplemental security income (SSI) by the Social Security Administration (SSA). Mr. Diaz challenges the SSA's finding that he is not disabled and has the residual functional capacity to perform, with certain nonexertional limitations, a full range of sedentary and light work. We affirm.

## I

## BACKGROUND

In 1981, Mr. Diaz, a cutting torch operator, was cutting a plate over a gas tank when the tank exploded, throwing him backwards and causing second and third degree burns over fifty to sixty percent of his body. Mr. Diaz underwent a series of burn debridement surgeries, including surgeries on his left hand, and multiple skin grafts. He did not work until 1984. Between 1984 and 1988, Mr. Diaz held a number of jobs for periods of two to nine months per job. He was laid off from his last job in January 1988, and has not engaged in gainful employment since then.

In March 1989, Mr. Diaz applied for DIB and SSI. He claimed that he was disabled because of back pain, pain from burns, numbness in his legs, damage to his nerve endings, and fatigue. His applications were denied initially and on reconsideration. After initial denials of his application by the agency, an administrative law judge (ALJ) conducted a hearing and affirmed the denial of Mr. Diaz's application. The Appeals Council vacated and remanded the case because the ALJ's findings "[did] not reflect an evaluation of the diagnosis of degenerative disc disease, established by x-ray." R.7 at 358. The Appeals Council noted that the diagnosis was confirmed provisionally by a MRI scan showing bulging discs and disc herniation. After a second hearing, a different ALJ again found Mr. Diaz not disabled. The ALJ concluded that Mr. Diaz could not perform his past relevant work, and that he was unskilled. Mr. Diaz was forty-four years old at the time of the ALJ's decision and could not read or write English. The ALJ also determined

that, despite the limitations caused by Mr. Diaz's severe back condition (bone spurs and narrowing of a disc space) and burn injuries nine years earlier, Mr. Diaz had the residual functional capacity to perform a range of light and sedentary work, except for work that required moving machinery or exposure to heights and temperature extremes.

 Mr. Diaz then appealed the ALJ's decision to the Appeals Council and was granted a thirty-day extension to submit additional evidence. He was given four more extensions and the last extension expired on May 20, 1993. On June 4, 1993, the Appeals Council denied Mr. Diaz's request for review, noting that it had "not received any additional evidence or contentions from [Mr. Diaz's] representative despite several extensions of time to allow submission of such material." R.7 at 72. Four days later, Mr. Diaz petitioned the Appeals Council to reopen the matter. Mr. Diaz's counsel argued that the Appeals Council failed to consider his "closing argument and the additional evidence I submitted on May 20, 1993." *Id.* at 8. Included with his petition to reopen was a brief dated May 20, 1993, reports from two doctors, a letter from consultative neurologist Dr. Joseph Cascino that summarized his findings contained in a prior report, a letter from a rehabilitation counselor, and a "physical capacity evaluation" prepared by the Loyola University Hand Rehabilitation Center. After considering the newly submitted evidence, the Appeals Council ruled that there was no basis to vacate its June 4, 1993 action denying review.[1]

1. Because the Appeals Council denied review of Mr. Diaz's case, the ALJ's decision became the final decision of the SSA. 20 C.F.R. § 404.981; *Herron v. Shalala,* 19 F.3d 329, 332 (7th Cir. 1994). In challenging the ALJ's decision, Mr. Diaz relies not only on the evidence that was before the ALJ but also on the evidence he had submitted to the Appeals Council in support of his request to reopen his case. We have held that, when the Appeals Council has denied review, evidence submitted for the first time to the Council, though technically a part of the administrative record, cannot be considered in determining the correctness of the ALJ's decision. *Wolfe v. Shalala,* 997 F.2d 321, 322 n. 3 (7th Cir.1993); *Eads v. Secretary of the Dep't of Health & Human Servs.,* 983 F.2d 815, 817 (7th Cir.1993); *Micus v. Bowen,* 979 F.2d 602, 606 n.

## II

## DISCUSSION

### 1.

 Mr. Diaz contends that the SSA has failed to establish that he has the residual functional capacity (RFC) to perform a full range of sedentary and light work (except for work which requires moving machinery or exposure to heights and temperature extremes). *See* 20 C.F.R. §§ 404.1520, 416.920; *Pope v. Shalala,* 998 F.2d 473, 477 (7th Cir. 1993) ("If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job."). Our review of the SSA's decision is limited. *Cass v. Shalala,* 8 F.3d 552, 554–55 (7th Cir.1993); *see also* 42 U.S.C. § 405(g) ("The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive."). We shall affirm the SSA's finding if it is supported by substantial evidence. *Pope,* 998 F.2d at 480. Although a mere scintilla of proof will not suffice to uphold the SSA's findings, the standard of substantial evidence requires no more than "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Binion v. Shalala,* 13 F.3d 243, 247 (7th Cir.1994). We cannot substitute our own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled. *Cass,* 8 F.3d at 555; *Ed-*

1 (7th Cir.1992). Although we may conduct a limited review of the newly submitted evidence when a claimant alleges that the Appeals Council's refusal to review the ALJ's decision is based on a mistake of law, *Eads,* 983 F.2d at 817, Mr. Diaz makes no such allegation on appeal. Additionally, we note that the Appeals Council treated the newly submitted evidence as a part of Mr. Diaz's petition to reopen his case. Because a decision whether to reopen a case is not subject to judicial review, *Califano v. Sanders,* 430 U.S. 99, 107–08, 97 S.Ct. 980, 985–86, 51 L.Ed.2d 192 (1977); *Bolden for Bolden v. Bowen,* 868 F.2d 916, 918 (7th Cir.1989), the additional evidence accompanying the petition to reopen similarly cannot be considered. Therefore, we shall consider only the evidence that was before the ALJ.

*wards v. Sullivan,* 985 F.2d 334, 336 (7th Cir.1993). Thus, the issue before this court is not whether Mr. Diaz is disabled, but rather, whether the ALJ's findings were supported by substantial evidence.

■■■■ The regulations define sedentary work as requiring primarily sitting, some walking and standing, and minimal lifting. *See* 20 C.F.R. §§ 404.1567(a), 416.967(a). A claimant can do sedentary work if he can (1) sit up for approximately six hours of an eight-hour workday, (2) do occasional lifting of objects up to ten pounds, and (3) occasionally walk or stand for no more than about two hours of an eight-hour workday. *See Edwards,* 985 F.2d at 339; *Kapusta v. Sullivan,* 900 F.2d 94, 96 (7th Cir.1989); Social Security Ruling 83–10. Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds. A job in this category requires much walking or standing (off and on, for a total of approximately six hours of an eight-hour workday), and, if sitting, it involves some pushing and pulling of the arms or legs. *See* 20 C.F.R. §§ 404.1567(b), 416.967(b); *Herron v. Shalala,* 19 F.3d 329, 332 n. 7 (7th Cir.1994).

■■■■ The ALJ relied on both medical and nonmedical evidence in assessing Mr. Diaz's RFC to do light and sedentary work.[2] Medical reports from two hospitals where Mr. Diaz was treated as an outpatient indicate that Mr. Diaz had full range or near full range of motion of the spine and full upper extremity strength, and that Mr. Diaz's skin grafts have healed well. Additionally, Dr. Cascino, a neurosurgeon who conducted a consultative neurological examination of Mr. Diaz in 1991, concluded that Mr. Diaz did not have a neurological condition. Dr. Cascino reported that Mr. Diaz could lift five to possibly ten pounds for one-third of an eight-hour day. His report also noted that Mr. Diaz

could walk two blocks, although he fatigued easily and must sit frequently. Dr. Cascino further noted that Mr. Diaz had a good hand/fist formation on the right side but not the left side, and that the hand/fist formations on both sides revealed good strength. Additionally, Dr. Cascino opined that Mr. Diaz could manipulate his fingers and thumb well with normal stereognostic sense, but noted that Mr. Diaz's impairments affected his ability to reach, push, and pull. Dr. Trafimow, who conducted an orthopedic consultative examination in 1992, opined that Mr. Diaz had no clear muscle weakness and no clear loss of muscle flexibility. He also noted that Mr. Diaz had a normal gait and weightbearing ability and did not need or use any ambulatory assistive device.

Further supporting the ALJ's RFC assessment is Mr. Diaz's testimony that he thought he could lift twenty pounds with his right hand from a sitting position and lift ten pounds with his left hand. He also stated that he could stoop and lift twenty pounds with both hands, although stooping would be painful. When asked whether he could perform a job where he could sit at least six hours per workday and would not have to lift more than ten pounds, Mr. Diaz responded that he could try, but that he would have to move around while sitting. Mr. Diaz also testified that he could walk for three blocks, although he must then rest before walking an additional three blocks. He reported that he had not driven a car for more than ten miles in the six months prior to the hearing. Mr. Diaz stated that he took public transportation to the hearing. Mr. Diaz further testified that he did odd jobs around the house, and estimated that he could stand for one hour at a time. Mr. Diaz complained, however, of pain in his back and legs, and of difficulty bending the little finger and thumb on his left hand.

**2.** Mr. Diaz claims that the ALJ erred in making the "medical judgment" of his RFC. According to Mr. Diaz, the ALJ should have relied solely on the opinions of physicians. The determination of RFC, however, is an issue reserved to the SSA. *See* 20 C.F.R. §§ 404.1527(e)(2), 416.927(e)(2). In determining what a claimant can do despite his limitations, the SSA must consider the entire record, including all relevant medical and non-

medical evidence, such as a claimant's own statement of what he or she is able or unable to do. 20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.945(a). That is, the SSA need not accept only physicians' opinions. In fact, if conflicting medical evidence is present, the SSA has the responsibility of resolving the conflict. *Stephens v. Heckler,* 766 F.2d 284, 287 (7th Cir.1985).

Although Mr. Diaz was laid off from his last job, he stated that, even if he had not been laid off, he would have had to stop working because of the increasing pain in his back and legs. The ALJ also noted that, during the four years Mr. Diaz was working, he had worked as a lawn cutter for approximately two months. The job required walking for four hours, standing for three hours, sitting for one hour, occasional bending, and frequent lifting of up to ten pounds. Mr. Diaz had also worked as a cutting torch operator for periods of four to nine months. The job required two hours of walking, four hours of standing, two hours of sitting, and frequent lifting of up to twenty-five pounds.

A vocational expert, Allen Searles, testified at Mr. Diaz's second hearing that an individual with Mr. Diaz's medical history, age (44), education (sixth grade), and past work experience could perform jobs at both sedentary and light levels of exertion. According to Searles, if Mr. Diaz could stand for only one hour at a time as he had claimed, that would eliminate most light work. Searles stated, however, that tens of thousands of sedentary jobs existed in the Chicago area that Mr. Diaz could perform, and only about thirty percent of those jobs would be eliminated by an inability to read or write English. These jobs involve work as assembler, tester, coil winder, and packer.

In light of the medical evidence, the vocational expert's testimony and Mr. Diaz's own testimony and work history, we believe that the ALJ's assessment of Mr. Diaz's capability to perform a range of sedentary work is supported by substantial evidence. Whether the same can be said about Mr. Diaz's ability to do light work is a closer question. The vocational expert indicated that, if Mr. Diaz could stand only for one hour at a time as he had testified, that would eliminate most light work. The record also suggests that Mr. Diaz could not do much walking, and, as defined by the regulations, light work involves significant amounts of standing and walking. Dr. Cascino's report that Mr. Diaz had limited ability to push, pull, and reach, to the extent that it is based on clinical findings and not Mr. Diaz's account, also seems to undercut the finding

that Mr. Diaz could do light work, which requires pushing and pulling when sitting. On the other hand, evidence of Mr. Diaz's inability to walk and stand was largely based upon Mr. Diaz's own statements. The ALJ was entitled to make a credibility determination and conclude that the extent of Mr. Diaz's impairment was exaggerated. In any event, Mr. Diaz's ability to do sedentary work, which is clearly supported by substantial evidence, requires that we affirm the determination that Mr. Diaz is not disabled. *Cf. Johnson v. Bowen,* 851 F.2d 748, 751 (5th Cir.1988) (upholding district court's decision that, even though SSA's determination that claimant could perform light work was not supported by substantial evidence, SSA's ruling could be affirmed because "there was substantial evidence in the record to support a conclusion that [the claimant] could perform sedentary work").

### 2.

Mr. Diaz argues that the ALJ selectively excluded evidence concerning his limited ability to sit, stand, and walk. He especially emphasizes that sedentary jobs require sitting for about six hours per day. Specifically, Mr. Diaz challenges the ALJ's rejection of the portion of Dr. Cascino's report which noted that Mr. Diaz could sit for only about fifteen minutes before he had to get up to stretch and walk around. According to Mr. Diaz, the ALJ erred because he failed to articulate the reasons for the rejection of this evidence, and because the ALJ himself stated that Dr. Cascino's report would be given greater weight than any other reports in the record.

An ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning. *See Herron,* 19 F.3d at 333; *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir.1993) (per curiam). An ALJ's failure to consider an entire line of evidence falls below the minimal level of articulation required. *Herron,* 19 F.3d at 333. But that is not the situation here. Mr. Diaz's challenge goes to the ALJ's weighing of Dr. Cascino's medical

evidence. The portion of Dr. Cascino's report concerning Mr. Diaz's limited ability to sit, stand or walk appears to be based upon Mr. Diaz's own statements about his functional restrictions at the time of the examination.[3] The ALJ could consider this portion of the report less significant than the doctor's other findings, and we shall not reweigh the evidence on appeal. *Cass,* 8 F.3d at 555. Moreover, aside from the fact that an ALJ need not provide a complete written evaluation of every piece of testimony and evidence, *Carlson,* 999 F.2d at 181, the ALJ's rejection is consistent with his specific finding that Mr. Diaz's claims of residual capacity and his subjective complaints of pain were not credible.

■ Moreover, there is a strong indication that the ALJ did consider and weigh the evidence provided in Dr. Cascino's report concerning the extent of Mr. Diaz's limitations, even though he did not specifically mention the statement that Mr. Diaz could sit for only about fifteen minutes. As Mr. Diaz acknowledged in his reply brief, the ALJ did rely on Dr. Cascino's report in assessing that "it is evident that prolonged standing or walking can aggravate Mr. Diaz's condition, as a result of fatigue caused by his history of burns." Reply Br. at 13. Because we can "track the ALJ's reasoning and be assured that the ALJ considered the important evidence," *Green v. Shalala,* 51 F.3d 96, 101 (7th Cir.1995), we believe that the ALJ has met the minimal articulation standard.

### 3.

■ Mr. Diaz also challenges the ALJ's finding that he was not credible. The ALJ specifically found that Mr. Diaz was not credible "with regard to the nature, location, onset, duration, frequency, radiation, and intensity of pain alleged," and concerning his "functional restrictions." R.7 at 92–93. Despite Mr. Diaz's argument to the contrary, we have repeatedly stated that an ALJ's credibility determination will not be disturbed unless it is patently wrong. *Pope,* 998 F.2d at 487. Here, the ALJ's credibility finding was supported by the record. It was based on Mr. Diaz's work history following the accident,[4] Dr. Cascino's and Dr. Trafimow's evaluations that Mr. Diaz did not have a neurological problem and had normal weightbearing and ambulation capacity, and a medical expert's hearing testimony that Mr. Diaz's complaints were not consistent with the type of condition that would be caused by Mr. Diaz's impairments. The ALJ also noted that Mr. Diaz was "making an effort to appear disabled," a finding this court will not disturb given the ALJ's unique position to observe Mr. Diaz. *See Wolfe v. Shalala,* 997 F.2d 321, 327 (7th Cir.1993).

### 4.

■ Finally, Mr. Diaz claims that the ALJ erred in failing to consider evidence of his inability to use his hands. We note that the issue of Mr. Diaz's hand impairment was discussed explicitly by Judge Horn, who conducted the first hearing and found no hand limitation. Although the Appeals Council had remanded the judge's findings for additional evidence on another matter, the evidence about the condition of Mr. Diaz's hands was not questioned. Mr. Diaz places much emphasis on the "physical capacity evaluation" prepared by the Loyola University Hand Rehabilitation Center. However, as we have noted earlier, that report was not before the ALJ, and cannot now be used to determine the correctness of the ALJ's action. *Eads v. Secretary of the Dep't of Health & Human Servs.,* 983 F.2d 815, 817

---

3. Relying on a letter from Dr. Cascino, Mr. Diaz argues that Dr. Cascino's opinion was based not only on Mr. Diaz's own statements but also on Mr. Diaz's past medical records. This letter was not before the ALJ and cannot be considered.

4. Although Mr. Diaz's employment was not continuous between 1984 and 1988, the ALJ could conclude that Mr. Diaz had exhibited sufficient residual functional capacity given the various positions he held during this period, because there is no evidence suggesting that Mr. Diaz stopped working at each job due to an inability to perform the job requirements. *Cf. Halvorsen v. Heckler,* 743 F.2d 1221, 1226–27 (7th Cir.1984) (indicating that fact that claimant, who based her benefits application on her epilepsy, worked for period longer than frequency of her major seizures did not by itself indicate her ability to engage in substantial gainful activity). In fact, between 1985 and 1988, he worked as a cutting torch operator for three different employers.

(7th Cir.1993). Mr. Diaz does rely on a piece of evidence that the ALJ failed to mention, even though it was before him—an order of the Circuit Court of Cook County, dated July 21, 1987, affirming the award of workers' compensation benefits to Mr. Diaz for, among other things, "permanent disability to the extent of 65% of the use of his left and 35% of the use of his right hand." R.7 at 421-23. Yet, as discussed before, the ALJ was not required to discuss every piece of evidence, and the weight to be given to this evidence remained within the discretion of the ALJ. *Cf. Green,* 51 F.3d at 101–02 (holding that, when a claimant "presents considerable proof to counter the agency's position, the ALJ must articulate, at some minimal level, his analysis of the evidence;" case vacated and remanded because ALJ failed to consider state court's presumptive determination of death in child survivor benefits cases). The ALJ could conclude that the state court's determination of Mr. Diaz's entitlement to state workers' compensation is entitled to little weight because it involved an entirely different inquiry from a determination of "disability" within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A). More importantly, the record contained sufficient evidence, some of more recent vintage with respect to the condition of Mr. Diaz's hands, that supports the ALJ's disability determination. Although there is some indication in the record that Mr. Diaz's ability to move his left thumb and little finger is limited and that his grip strength appeared to be below normal, Dr. Kelley reported in 1988 that Mr. Diaz had "no difficulty" using his hands to "hold, grasp or manipulate objects," and no impairment of manual dexterity. R.7 at 300. Dr. Castellanos, who was Mr. Diaz's treating physician, reported in 1989 that Mr. Diaz had full capacity finger dexterity in both hands. The University of Illinois Hospital reported in 1991 that Mr. Diaz had good function in both hands. Again in 1991, Dr. Cascino reported that Mr. Diaz had good and equal strength in both hands and that he manipulated his fingers and thumbs well. While it is true that "most unskilled sedentary jobs

require good use of the hands and fingers for repetitive hand-finger actions," *see* Social Security Ruling 83–14, there is sufficient evidence to support a finding that Mr. Diaz could perform sedentary jobs.

### Conclusion

For the forgoing reasons, we affirm the judgment of the district court upholding the ALJ's determination that Mr. Diaz is not disabled.

AFFIRMED.