Theodore M. DUE, Plaintiff–Appellant,

v.

Larry G. MASSANARI,[1] Defendant–Appellee.

No. 01–1305.

United States Court of Appeals, Seventh Circuit.

Argued June 13, 2001.

Decided July 12, 2001.

---

1. Pursuant to Fed. R.App. P. 43(c)(2), Larry G. Massanari is automatically substituted for the original defendant, William A. Halter.

Before Hon. BAUER, Hon. COFFEY, Hon. KANNE, Circuit Judges.

### ORDER

Theodore Due appeals the district court's decision upholding the denial of his application for Social Security disability and supplemental security income benefits. Due claims that the final decision of the Commissioner is not supported by substantial evidence. We affirm.

### Background

Due, who obtained a GED in 1982, was 47 at the time he claims to have become disabled in June 1997. Due suffers from numerous ailments, including the following which he claims prevent him from working: hepatitis C, back pain, right knee pain from loose cartilage and arthritis, diabetes, tuberculosis, carpal tunnel syndrome, shortness of breath, and a hiatal hernia. Due had a spotty work history since 1989, including stints as a laundromat attendant, laborer, dishwasher and gas station attendant interspersed with periods of unemployment. Due's last job was as a laundromat attendant, which ended on June 14, 1997, which he identifies as his disability onset date. Due testified that he was laid off at that time due to a downturn in business, although he was having difficulty performing his job because his knee gave out repeatedly and his back hurt, rendering it difficult for him to lift laundry or trash and to hold onto a mop.

Due testified that he spends his days reading, watching videos and working crossword puzzles. He added that he cooks some, although he eats most of his meals at a community kitchen. Due washes his own laundry and does his own grocery shopping with the help of a friend, and believes that his ailments did not prevent him from caring for his personal needs. Due has trouble sitting for long periods of time because of his back pain, can stand only for less than an hour at a time because of his back, and cannot walk further than two or three blocks because of his back and knee problems.

### Medical History

The evidence considered by the Commissioner included Due's medical records predating the alleged onset of his disability. Records from December 1995 show that Due was seen at the Community Health Access Program Clinic ("CHAP clinic") in Bloomington, Indiana, complaining of lower back pain when standing and walking. Due's records note that he had suffered a back injury in a 1983 car accident and had fallen down stairs in 1991. No treatment was indicated for his pain at that time. In July 1996, Due was again examined at the CHAP clinic, where it was

noted that he had tested positive for hepatitis C, although he had no complaints except for intermittent mild abdominal discomfort. Due's records also noted that he had a positive PPD (tuberculosis) test in December 1995, but that a chest x-ray was normal. Due's records further stated that he had carpal tunnel syndrome, for which he was taking Ibuprofen.

On October 24, 1997, Due was examined at the CHAP clinic, complaining of stress, including headaches and insomnia, stomach pains, dry heaves, diarrhea, and back pain. He was diagnosed with situational stress, hepatitis C, insomnia, polyuria (excessive urination) and polydipsia (excessive thirst), and was prescribed Desyrel (a medicine for migraines) for his headaches.

On November 17, 1997, Due saw Dr. Francis Lee, an internal medicine specialist. Due had previously received abnormal results in a glucose tolerance test and a thyroid function test, and was referred to Dr. Lee for further evaluation and treatment. Dr. Lee noted that Due reported feeling well overall, but had a "multitude of stomach complaints" and a history of hepatitis C. After examining Due, Dr. Lee agreed that Due's glucose tolerance test was consistent with impaired glucose tolerance. Due was referred to a Diabetes Center and was prescribed Precose to prevent overt diabetes.

On March 5, 1998, Due was examined at the CHAP clinic. Due complained of stomach pain, coughing and pain in his chest. It was noted that Due was taking Precose for diabetes and Actigal for hepatitis C. Due was given a referral to Dr. Napoleon Maminta, an internal medicine specialist at Internal Medical Associates of Bloomington. Dr. Maminta's notes from March 12 indicated that Due complained of diarrhea and abdominal pain but denied having any other significant problems. Dr. Maminta noted that he needed to await further test results to determine the source of Due's pain, and offered Due "nothing" at that point.

On March 28, Due saw Dr. Mosaab Hasan, a consulting internal medicine practitioner, for a consultative general medical examination and evaluation. Due reported that he suffered from diabetes mellitus, back problems, pain in his right knee, and hepatitis C. Dr. Hasan noted that Due had a normal gait, could squat with help and stand up from the squatted position, had a normal range of motion in his spine, with some pain in the final degrees of motion, and a normal range of motion in his knee. Due had full grip strength, normal reflexes, and normal fine manipulation skills. Hassan concluded that Due's diabetes was under good control and that he suffered no signs of liver failure associated with the hepatitis C.

On April 14, Due was again examined at the CHAP clinic, complaining of pain in his right knee and lower back. A nurse diagnosed Due's pain as probable arthritis. No treatment was indicated, but a referral was made for Due to see Dr. Maminta. Dr. Maminta's notes from April 17 reflect that Due was being seen for upper-quadrant tenderness, which Dr. Maminta believed stemmed from a gall bladder problem. Due also complained of headaches, for which he was prescribed Midrin.

In June, Due again visited Dr. Maminta, complaining of coughing and wheezing. Dr. Maminta noted that Due was responding well to the Precose for his diabetes, and that his hepatitis C was under control with Actigal. Dr. Maminta diagnosed Due with pneumonia, ordered a chest x-ray taken and prescribed an antibiotic for two weeks. On a follow-up visit with Dr. Maminta in July 1998, Dr. Maminta noted that Due had suffered from bronchitis, which had cleared up. Due was suffering from hives, but his diabetes was showing "excellent control." Due reported being

under significant stress and having trouble sleeping, but otherwise had no complaints.

On July 23, Due was examined by Dr. Mustafa Alnounou, a consultative internal medicine specialist, for a consultative general medical examination and evaluation. Dr. Alnounou noted that Due suffered from diabetes mellitus, which was "controlled very well" by medicines including Diabetase and Precose. Due complained of difficulty walking and going up stairs, and stated that his knee gave out on occasion. Dr. Alnounou noted that Due reported using a cane to support himself and keep himself from falling when he was away from his house, but took no medication for his arthritis. Dr. Alnounou further noted that Due limped to his left because of pain in his right knee, was unable to walk on heels and toes or squat and stand, and had a limited range of motion in the spine and hips. Due also suffered from carpal tunnel syndrome, which caused some weakness and tingling in his right hand. However, Due had full grip strength and normal fine motor manipulation skills, as well as normal motor and sensory functions. Dr. Alnounou stated that Due had hepatitis C, but that it was unclear whether Due had any advanced liver disease or cirrhosis from it. Dr. Alnounou determined that Due's hepatitis needed further management, although he did not comment further on the hepatitis condition.

In August, Due was examined at the CHAP clinic. At that time, Due complained of abdominal pain and loose stool. Due was diagnosed as having a possible peptic ulcer and was referred by Dr. Maminta to Dr. Prodyot Ghosh at Bloomington Hospital for an endoscopy, which revealed that Due suffered from a small hiatal hernia and mild gastritis. No treatment was specified for these problems, although it appears that Due was prescribed medicine (Prevacid and Axid) for his gastritis at some point.

On August 31, Due was examined by psychologist Dr. Albert Fink. Although it is not clear what precipitated his visit to Dr. Fink, Due reported to Dr. Fink that he was unhappy with his situation and "depressive." Dr. Fink determined that Due did not exhibit symptoms of clinical depression, but "deferred" a diagnosis regarding any mental disorders.

On November 30, Due was again examined by Dr. Maminta. Due complained of itching related to hepatitis C, abdominal pain, right knee pain and nausea and vomiting. Because of his degenerative joint disease in his right knee, Due sought, and received from Dr. Maminta, a prescription for a cane. Dr. Maminta noted that Due had no other complaints and that Due's hepatitis was stable.

*Claims History*

Due applied for disability insurance benefits and supplemental security income in 1997 and 1998, respectively. Due's applications were denied both on initial examination and on reconsideration. Due requested a hearing, which was held before an ALJ on April 6, 1999. Due testified that his back pain prevented him from sitting for long periods, and that he could not walk more than a couple blocks or bend over and lift weights. Due also testified that his knee gave out four to seven times a month, and that he used a cane to give him some support. Due stated that he experienced shortness of breath, even when "walking along regular." Due also testified that he was able to travel on public transportation, that he did his own shopping with some help, and that he cooked. The ALJ posed several hypothetical questions to vocational expert Hershel Northern about the availability of jobs for a person with disabilities similar to Due's.

Based on his review of Due's claim file, Northern testified that there were numerous jobs in the national economy that a person with Due's ailments could perform. On May 16, 1999, the ALJ issued a written decision, finding that Due was not disabled or entitled to benefits.

In his decision, the ALJ followed the five-step analysis mandated by 20 C.F.R. §§ 404.1520 and 416.920 to determine whether Due was disabled. Under this test, the ALJ sequentially considers 1) whether the claimant is currently employed, 2) whether the claimant has a severe impairment, 3) whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. § 404, Subpt. P, App. 1, 4) whether the claimant can perform his past work, and 5) whether the claimant is capable of performing work in the national economy. *See Knight v. Chater,* 55 F.3d 309, 313 (7th Cir.1995). If a claimant satisfies steps one through three, he is automatically found to be disabled. If the claimant meets steps one and two, but not three, then he must satisfy step four. *Id.* The claimant bears the burden of proof in steps one through four. If the claimant satisfies step four, the burden shifts to the Commissioner to prove that the claimant is capable of performing work in the national economy. *Id.*

The ALJ determined that Due met step one of the analysis because he was not currently employed. The ALJ determined that Due also met step two because he suffered from several severe impairments, including carpal tunnel syndrome, a hiatal hernia, obesity, and degenerative joint disease in his right knee, which significantly interfered with his ability to perform basic work activities. The ALJ also found, however, that a number of Due's impairments were not severe, including Due's lower back pain, shortness of breath, hepatitis C, diabetes mellitus, headaches and depression. With respect to step three, the ALJ found that none of Due's impairments, either individually or in combination, met or equaled an impairment listed in 20 C.F.R. § 404, Subpt. P, App. 1. At step four, the ALJ determined that Due could not return to any of his past jobs, but that he retained the ability to perform light exertional work. Finally, with respect to step five, the ALJ determined that the Commissioner had met his burden of proving that Due could perform jobs which exist in significant numbers in the national economy—namely as an office cleaner or a hand packer.

Due filed a request for review of the ALJ's decision with the Appeals Council, which denied the request on May 5, 2000. Thus, the ALJ's opinion constitutes the Commissioner's final decision. Due filed a civil action for judicial review of the Commissioner's determination, which the district court affirmed on December 7, 2000. Due timely appealed to this Court.

### Analysis

■ Due generally argues that the Commissioner's decision was not supported by substantial evidence. We will affirm the Commissioner's findings if they are supported by substantial evidence. 42 U.S.C. § 405; *see also Zurawski v. Halter,* 245 F.3d 881, 887 (7th Cir.2001). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). In reviewing the Commissioner's findings, we may not decide facts anew, reweigh the evidence or substitute our judgment for that of the Commissioner in deciding whether a claimant is disabled. *Powers v. Apfel,* 207 F.3d 431, 434 (7th Cir.2000).

I. *Need For An Independent Medical Advisor*

■ Due first argues that the ALJ erred by not utilizing a medical expert to

help assess his disability claim. According to Due, the ALJ is "required" to make his findings regarding disability based on the opinion of a medical expert. In support, he relies on 20 C.F.R. § 1526(b), which provides that the Commissioner "will also consider the medical opinion given by one or more medical ... consultants ... in deciding medical equivalence." Due, however, overstates the necessity for consulting a medical expert.

■ Due incorrectly interprets § 404.1526(b) as a mandate that a medical expert be consulted by the ALJ in every case. The Commissioner is the final decision maker regarding benefits. 42 U.S.C. § 405(b). Pursuant to 20 C.F.R. § 404.1526(a), the Commissioner (or, as in this case, the ALJ) determines if a claimant's disability meets or is medically equivalent to a disability in the Listing in 20 C.F.R. § 404, Subpt. P, App. 1 by comparing the claimant's symptoms, signs and laboratory findings as shown in the medical evidence in the claimant's file with the medical criteria shown for a listed impairment. In cases such as this where a claim file contains extensive medical records the ALJ need not consult a medical expert in making a disability determination. *See Henderson v. Apfel,* 179 F.3d 507, 513 (7th Cir.1999)

Due has not argued that his medical records are incomplete or that any material medical information was not presented to the ALJ. Indeed, Due's claim file contains records from at least six doctors over a span of more than two years regarding ailments ranging from headaches to hepatitis C. These records include notes from two consultative internal medicine specialists, Drs. Hasan and Alnounou, who examined Due in the context of his disability and SSI claims. In his decision, the ALJ repeatedly references both Dr. Hasan's and Dr. Alnounou's reports to support his findings that Due has not suffered any

marked limitation in motion, loss of major functions, or neurological deficits. When the record includes the opinions of consulting physicians, there is sufficient information for the ALJ to make a decision without the need for independent, additional expert testimony. *See Wilson v. Apfel,* 179 F.3d 1276, 1278 (11th Cir.1999) (per curiam). Since Due's file contained extensive, relevant medical reports, the ALJ had sufficient information before him to make a disability determination in this case and did not err by declining to consult a medical expert.

Due's citation to *Green v. Apfel,* 204 F.3d 780, 782 (7th Cir.2000), is of no avail. In *Green,* we reversed the denial of benefits by an ALJ and remanded the case so that a physician could examine either the claimant or his records to determine whether a disability existed. *Id.* The ALJ had rejected Green's complaints of debilitating pain and shortness of breath, and had failed to consider the aggregate effect of Green's ailments. *Id.* at 781–82. We found that the ALJ had failed to build a bridge from the evidence to his conclusion, because his analysis did not provide a rational basis for the denial of benefits. *Id.* Unlike *Green,* the ALJ here engaged in a detailed analysis of the evidence contained in the medical record to determine that Due did not suffer from any impairment or combination of impairments that prevented him from gainful employment. For example, the ALJ determined the following from Due's medical records: Due suffered a slight loss of motion in his back but sought little treatment for back pain and took no medication for his pain; Due occasionally suffered symptoms from hepatitis C but they improved when he began taking medication; Due's diabetes had responded well to medication and was under "excellent control"; and Due had no significant clinical deficits from his knee pain other than a slight limp and had sought no

treatment or taken any medication for his pain. The ALJ also determined that even taken in combination, Due's maladies did not meet any impairment in the Listing. The ALJ considered the consulting physicians' reports in reaching his conclusions and did not draw his own medical conclusions about Due's complaints. *Green* is therefore distinguishable from Due's case.

## II. *Full Consideration Of Evidence*

■ Due next argues that the ALJ improperly failed to consider lines of relevant evidence that were contrary to his findings. It is true that an ALJ may not disregard entire lines of evidence that are contrary to his findings, *Henderson*, 179 F.3d at 514, but he need not provide a complete written evaluation of every piece of testimony and evidence in the record. *Id.* The ALJ's decision in this case demonstrates that he considered all the relevant evidence.

### A. Records Regarding Hepatitis C

■ Due argues that the ALJ ignored evidence contrary to his finding that Due's hepatitis C does not constitute a "severe impairment." For instance, Due points to a lab report of October 1997 which states that his hepatitis tests were "repeatedly reactive" and that he therefore "should be considered infectious." But as the ALJ specifically discussed, the report goes on to note that a repeatedly reactive test "does not substantiate infectivity or immunity." Additionally, the ALJ's decision was supported by the reports of Drs. Hassan and Alnounou that Due's hepatitis had stabilized after Due started taking medication. Due fails to demonstrate that the ALJ ignored contrary evidence regarding his hepatitis. Due also points to the results of a liver biopsy that were presented to the Appeals Council in July 1999, which noted that his liver showed "significant scarring." However, we may not consider them in reviewing the ALJ's decision be-

cause they were not presented first before the ALJ. *Diaz v. Chater*, 55 F.3d 300, 305 n. 1 (7th Cir.1995).

### B. Due's Testimony About His Hepatitis And Diabetes

■ Due also argues that the ALJ failed to properly consider his testimony regarding his hepatitis and diabetes at the hearing. The ALJ found that Due had testified that "there are no functional limitations resulting from diabetes." Due asserts that the ALJ misinterpreted his testimony because he actually testified that he was unaware of any functional limitations caused by his diabetes, not that he had no limitations. However, Due does not point to any evidence in the record regarding any limitations from his diabetes. In fact, as the ALJ found, Due's diabetes had responded well to medication. Due also asserts that the ALJ overlooked his testimony that he could not work around food or the public because of his hepatitis. However, when the ALJ considered the jobs that Due could still perform in Indiana, he did not include any jobs addressed by the vocational expert that involved handling food. Therefore, the ALJ did not fail to properly consider Due's testimony.

### C. Due's Subjective Complaints Regarding His Back And Knee

■ Due also argues that the ALJ ignored relevant evidence in determining that Due's subjective complaints concerning the severity of his impairments are not reasonably consistent with the objective medical evidence. Specifically, Due points to several doctors' reports noting that he suffered pain in his back, that he had cartilage damage in his right knee, and that he could neither walk on heels and toes nor rise from a squatted position. However, the ALJ determined that Due's

lower back injury was not a severe impairment because he suffered only a slight loss of motion in the lumbar spine, had sought very little treatment for his back, and took no medication for back pain. The ALJ also considered Due's knee injury and determined that Due's complaints were not credible because physical examinations detected no significant clinical deficits, and because Due neither sought much treatment for his knee nor took any medication for pain.

Due cites several other examples of evidence that he claims the ALJ failed to consider, but they are sketchy and need not be discussed in detail. For instance, Due claims that the ALJ failed to consider evidence regarding his depression, including Dr. Fink's conclusion that Due's condition was "marginal with respect to potential effectiveness in the workplace." However, Due overlooks Dr. Fink's finding that his symptoms were not sufficient for a diagnosis of clinical depression. Due has not demonstrated that the ALJ failed to consider any relevant evidence.

### III. *Application of "Light Work" Definition*

█ Lastly, Due argues that the ALJ applied an incorrect definition of "light work" in assessing the physical exertion requirements. In his decision, the ALJ gave a paraphrased definition of "light work," defining it as follows:

> [L]ifting or carrying ten pounds frequently; lifting or carrying twenty pounds occasionally; standing or walking, off and on, for six hours during an eight hour work day; intermittent sitting; and using hands and arms for grasping, holding and turning objects.

Due argues that the ALJ should have used the following definition of "light work," as contained in 20 C.F.R. §§ 404.1567(b) and 416.967(b):

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there is additional limiting factors such as loss of the fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) and 416.967(b). Due argues that the ALJ incorrectly paraphrased the Regulations, and thus applied them arbitrarily and capriciously.

Although it is true that the ALJ did not utilize the definition of "light work" as it appears in the Regulations, the definition he applied was not erroneous. This definition is consistent with Social Security Ruling 83–10, which defines "light work" as standing or walking for approximately six hours and sitting for two hours in an eight-hour day and lifting or carrying objects weighing up to ten pounds frequently. This court also has used a definition of "light work" similar to that used by the ALJ in this case. *See Clifford v. Apfel,* 227 F.3d 863, 868 n. 2 (7th Cir.2000) (defining "light work" as "(1) lifting or carrying ten pounds frequently; (2) lifting twenty pounds occasionally; (3) standing or walking, off and on, for six hours during an eight-hour workday; (4) intermittent sitting; and (5) using hands and arms for grasping, holding and turning objects."). The ALJ did not err by using his paraphrased definition of "light work."

### Conclusion

The Commissioner's finding that Due is not disabled is supported by substantial evidence. Accordingly, we AFFIRM the decision of the Commissioner denying Due disability and supplemental security income benefits.