**Gary D. BACK, Plaintiff–Appellant,**

v.

**Jo Anne B. BARNHART, Commissioner of the Social Security Administration, Defendant–Appellee.**

No. 02–3486.

United States Court of Appeals, Seventh Circuit.

Argued March 5, 2003.

Decided April 11, 2003.

Before MANION, DIANE P. WOOD, and EVANS, Circuit Judges.

## ORDER

Gary Back appeals the district court's judgment affirming the Commissioner's decision to deny him disability insurance benefits. Following a hearing, an ALJ concluded that Back was not disabled for purposes of the Social Security Act because he did not suffer from a severe impairment (step two of the five-step inquiry). 20 C.F.R. § 404.1520(c). The district court concluded that substantial evidence supported the ALJ's decision, and we affirm.

## Background

In October 1998 Back applied for disability benefits for a period beginning in May 1997, coinciding with his being laid off from his job as an order filler in a warehouse (a job he held since 1972). He was 50 years old at the beginning of his alleged disability period. Following his onset date, Back worked part-time folding and packing clothes (from June through September 1998). At the time of his administrative hearing, he had been delivering newspapers one day per week.

Back alleged three types of disability. First, he alleged that pain in his right shoulder and neck prevented him from lifting his right arm over his head, extending it, or lifting objects. This condition relates to an automobile accident he suf-

fered in 1994. Second, he alleged cognitive limitations with memory and concentration relating to depression and grief he suffered after his wife's death in 1991. He received counseling briefly in 1992 for this depression. Third, he alleged difficulty hearing. In addition to these disabilities, he alleged additional symptoms including arthritis, high blood pressure, nerves, and gastrointestinal problems, but he did not allege limitations based on these symptoms.

After Back's initial request for benefits was denied, he requested a hearing, and one was held before an ALJ in September 1999. Back testified and iterated his limitations and symptoms pertaining to pain in his right shoulder and neck, and he explained that he had problems retaining information. He also discussed his daily activities such as cooking, cleaning, lifting, and laundry and his work delivering newspapers. The other relevant evidence in the record before the ALJ was the following:

*X–Ray Reports:* X-rays taken of Back's right shoulder and spine did not reveal any fractures or traumatic injury, but they did note some spinal abnormalities. An x-ray report from January 1995 for his right shoulder (following his automobile accident) noted "mild chronic changes of AC joints laterally in otherwise negative left shoulder." A report at that time for his spine noted no fractures, no traumatic injury, and normal vertebrae alignment, but also noted "cervical spondylosis with slight disc space narrowing." A report from October 1998 (following a second accident) noted that his right shoulder was "normal" with "no acute fracture or dislocation" and "no traumatic changes." A report for his spine from that time noted no fracture and normal alignment, but also noted "lower cervical spondylosis" as well as "moderate

disc space narrowing" and "some moderate degenerative disc disease."

*Dr. Beardsley:* Back's treating physician, Dr. Beardsley, filled out reports describing Back's physical condition following two separate examinations, one in November 1998 and one in January 1999. These examinations took place in connection with Back's claim for disability benefits. In the first report, Dr. Beardsley noted no muscle weakness or atrophy; no sensory or reflex abnormalities; no loss of major function of extremities; no loss of grip strength; no problem with ambulation; and full range of motion of Back's cervical and lumbar spine. Dr. Beardsley also noted, however, that Back had difficulty writing and lifting his arm over his head, and that he lacked 30 degrees of full extension of his shoulder. Finally, Dr. Beardsley noted that Back's hearing was generally normal though he had some difficulty hearing in crowded rooms. The second report contains the same findings as the first except it does not list any limitations on range of shoulder motion and stated that Dr. Beardsley did not notice any abnormality with Back's ability to perform fine motor skills (one of the examples listed is writing).

*Dr. Barrow:* In December 1998 a psychologist, Dr. Barrow, performed a consultative examination of Back for his disability claim. Dr. Barrow concluded that Back did not appear to have "symptoms consistent with an affective disorder" and "his symptoms of depression do not appear to be severe enough to warrant an adjustment disorder." Dr. Barrow also noted that Back's memory was "relatively adequate," but he noted that Back's concentration appeared to be "significantly impaired as reflected in his computational ability and ability to sustain his concentration when sequencing information," and that his "depressive feelings ... have an

affect (sic) on his concentration which will no doubt slow his approach to specific tasks." Next, he noted that Back reported writing every day, including short stories and novels. Finally, he noted that Back's "comprehension, as well as capacity for abstraction and formal judgement appear to be fully intact with his fund of general information appearing to be fully adequate as well."

*Dr. Shipley and Dr. Lavallo:* A state psychologist, Dr. Shipley, and a state physician, Dr. Lavallo, each submitted reports on Back's conditions. Neither examined Back. Dr. Shipley, relying primarily on Dr. Barrow's report, concluded that Back did not have a severe mental impairment. Dr. Lavallo, relying primarily on Dr. Beardsley's reports and his own conclusion that Back's symptom reports were credible, concluded that Back could perform work consistent with "light" work, such as lifting twenty pounds occasionally and ten pounds frequently. Two other state agency doctors later reviewed and agreed with these reports.

*Dr. Rumble:* Following the ALJ hearing, Back supplemented the record by submitting a "Mental Residual Functional Capacity Assessment" and "Neuropsychological Testing Report" from Dr. Rumble, a psychologist who examined Back in November 1999. First, in a number of categories pertaining to memory and concentration, Dr. Rumble concluded that Back was "not significantly limited"; but in two categories pertaining to understanding, remembering, and carrying out detailed instructions, he concluded that Back was "moderately limited." Dr. Rumble noted that Back "appeared to be somatically focused and is suspected of over-describing symptom severity because of this somatic preoccupation and self-perception that he is physically and cognitively impaired." He concluded that Back manifested symptoms consistent with depressive, anxiety, and personality disorders. And he recommended that Back consider taking antidepressant medication and that he employ "coping strategies" to help with concentration during his delivery job, such as using a counter or writing down numbers more frequently.

After first concluding that Back did not engage in substantial gainful activity during the claimed disability period (step one), the ALJ concluded that Back did not have a severe impairment (step two). In reaching this conclusion, the ALJ found that Back did not have a medically determinable physical or mental impairment or combination of impairments that would significantly limit his ability to perform basic work activities. According to the ALJ, Back's descriptions of his symptoms and his allegations of his limitations were not sufficient to establish a severe impairment, and Back failed to present medical or other objective evidence corroborating his alleged symptoms and limitations. In addition, the ALJ found that Back's complaints and allegations "were not fully credible," referring to Dr. Rumble's statement that Back appeared to be "overdescribing" his symptoms.

The district court affirmed the ALJ's decision, concluding that it was supported by substantial evidence and free from legal error.

## Discussion

On appeal Back argues that the ALJ erroneously evaluated each of his alleged disabilities. We will uphold the ALJ's determinations so long as they are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir.2001). In addition to challenging the ALJ's evaluations of his alleged disabilities, Back also discusses specific findings or omissions by the district court that he contends warrant

reversal: that the ALJ (1) impermissibly "played doctor"; (2) mischaracterized Backs's limited range of shoulder motion as "subjective"; and (3) failed to discuss x-ray reports showing that Back has spinal abnormalities.

Step two of the five-step disability inquiry states: "If you do not have any impairment or combination of impairments which significantly limits you physical or mental ability to do basic work activities, we will find that you do not have a severe impairment...." 20 C.F.R. § 404.1520(c); *Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987) (upholding the validity of the "severe impairment" requirement). Additional regulations elaborate on this requirement. An impairment must result from abnormalities established by medical or laboratory evidence and "not only by [the claimant's] statement of symptoms." § 404.1508; § 404.1528(a). "An impairment or combination of impairments is not severe if it does not significantly limit" the claimant's ability "to do basic work activities." § 404.1521(a). "Basic work activities" means "the abilities and aptitudes necessary to do most jobs" including physical functions such as walking and lifting and mental functions such as understanding and remembering simple instructions. § 404.1521(b). Statements of symptoms, including pain, are evaluated to the extent to which they "can reasonably be accepted as consistent with the objective medical evidence and other evidence" including "daily activities, efforts to work, and any other evidence showing how your impairment(s) and any related symptoms affect your ability to work." § 404.1529(a).

■ Substantial evidence supports the ALJ's conclusion that Back did not have a medically determinable impairment or combination of impairments that significantly limited his ability to perform basic work activities. First, with respect to Back's shoulder limitations, the ALJ discussed the relevant evidence including Back's statements of symptoms and limitations, Dr. Beardsley's reports, and x-rays of Back's shoulder. The ALJ noted that the only evidence of limitation was Back's own statements of pain, which were insufficient to establish a severe impairment. *See* 20 C.F.R. § 404.1508; § 404.1528(a). The ALJ further noted that Back performed substantial gainful employment at his warehouse job following his 1994 accident (the alleged cause of his shoulder problem) up until his alleged onset date in 1997. The ALJ discussed the lack of objective medical and other evidence in the record that would be consistent with Back's alleged symptoms. *See Higgs v. Bowen*, 880 F.2d 860, 863–64 (6th Cir.1988) (no "severe impairment" when record lacks objective medical evidence to support allegations.) The ALJ also found that Back's allegations were not "fully credible," quoting Dr. Rumble's statement that he believed Back to be "over-describing" his symptoms. *See Diaz v. Chater*, 55 F.3d 300, 308 (7th Cir.1995) (ALJ's credibility determinations are accepted unless "patently wrong").

■ Second, with respect to Back's cognitive limitations, the ALJ discussed the relevant evidence including the reports from Dr. Barrow and Dr. Rumble about Back's cognitive limitations as well as Back's own description of his daily activities and his delivery job. *See Clifford v. Apfel*, 227 F.3d 863, 871–72 (7th Cir.2000) (daily activities relevant to determine limitations caused by alleged symptoms); *see also Bunch v. Heckler*, 778 F.2d 396, 400–01 (7th Cir.1985) (no severe mental impairment when daily activities were consistent with basic work activities and claimant's allegations not credible). The ALJ also noted that Back did not appear to have any memory problems at the hearing; that

these alleged limitations (which stemmed from his wife's death in 1991) predated his alleged disability period by a number of years; and that the findings of Dr. Barrow (i.e., no mental disorder) were more consistent with Back's descriptions of his activities than Dr. Rumble's findings (i.e., mental disorder). *See Dixon,* 270 F.3d at 1178 (when two physicians conflict, the ALJ may decide whom to believe so long as substantial evidence supports the decision). The ALJ also discussed evidence contrary to his conclusion such as Dr. Barrow's finding that Back appeared to have moderate to significant concentration problems and concluded that this finding was not consistent with the other evidence in the record. *See Diaz,* 55 F.3d at 307 (ALJ may not discuss only favorable evidence). Specifically, the ALJ noted that Back's delivery job required concentration tasks such as stopping frequently and tracking mileage and deliveries.

■ Third, with respect to Back's alleged hearing problem, the ALJ discussed the relevant evidence including Dr. Beardsley's conclusion that Back's hearing was generally normal (except for difficulty hearing in crowded rooms). The ALJ also noted that Back did not have any trouble hearing at the administrative hearing. More importantly, the ALJ noted that Back failed to submit any medical evidence pertaining to his ability to hear. Given that the ALJ discussed the relevant evidence for these alleged limitations, resolved inconsistencies, and reached reasonable conclusions, substantial evidence supported the decision.

■ Even if substantial evidence supports the decision, Back contends that the ALJ committed specific errors that warrant reversal. First, Back maintains that the ALJ impermissibly "played doctor," *see Dixon,* 270 F.3d at 1177; *Green v. Apfel,* 204 F.3d 780 (7th Cir.2000), because

the ALJ stated that if Back's shoulder pain caused the limitations he alleged, then there likely would be some physical manifestation of these limitations such as muscle weakness or atrophy. Typical cases of ALJs impermissibly "playing doctor" are when they either reject a doctor's medical conclusion without other evidence, *see Dixon,* 270 F.3d at 1177, or when they draw medical conclusions themselves about a claimant without relying on medical evidence, *see, e.g., Green,* 204 F.3d at 782. In this case, the ALJ was relying on the report of Dr. Beardsley, who found no neurological or other physical abnormalities with Back's shoulder. Moreover, the regulations direct the ALJ to evaluate medical evidence and to look for objective medical evidence that corroborates a claimant's subjective statements of pain. *See* 20 C.F.R. § 404.1529. Here, rather than playing doctor, the ALJ appeared to be pointing out examples of the kinds of objective evidence one might expect to see if Back had the limitations he claimed.

■ Next, Back maintains that the ALJ mischaracterized the record by concluding that the finding in Dr. Beardsley's report of a 30–degree limitation in shoulder motion was based on "subjective pain reporting." Back contends that this is objective medical evidence consistent with his allegations, showing he has a severe impairment. It is not clear from the report, however, whether the limitation was based on Back's subjective pain reporting or on objective testing. Moreover, and more important, Dr. Beardsley's second report, submitted months after his first report, does not list any limitation on range of motion. Given this second report, the ALJ had reason to discount the finding in the first report.

Finally, Back maintains that the ALJ erred by not discussing x-ray reports documenting spinal abnormalities. And, Back

argues, these reports provide objective evidence to support Back's complaints of neck pain. Back, however, was not alleging any limitations in his neck or back movements due to pain; he was alleging physical limitations with shoulder and arm movements. Moreover, Dr. Beardsley did not list any physical abnormality or limitations on range of motion with respect to Back's back or neck. Therefore, given that Back was not alleging limitations with respect to neck or back movements, it was reasonable for the ALJ not to discuss this evidence in the decision.

AFFIRMED