Steven D. HICKMAN, Jr.,
Plaintiff–Appellant,

v.

Kenneth APFEL, Commissioner of
Social Security, Defendant–
Appellee.

No. 98–3901.

United States Court of Appeals,
Seventh Circuit.

Argued June 16, 1999.

Decided Aug. 6, 1999.

Eric Schnaufer (argued), Chicago, IL; J. Frank Hanley, II, Indianapolis, IN, for Plaintiff–Appellant.

Judith A. Stewart, Office of the United States Attorney, Indianapolis, IN; Marc Mates (argued), Social Security Administration, Office of the General Counsel, Region V, Chicago, IL, for Defendant–Appellee.

Before CUDAHY, ESCHBACH, and ROVNER, Circuit Judges.

ILANA DIAMOND ROVNER, Circuit Judge.

Since early childhood, Steven Hickman has suffered from a variety of maladies, including asthma, vascular abnormality, and, most importantly, a rare condition resulting in gigantism (or abnormally large growth) of his right leg and foot. Hickman, who is now nearly 18 years old, sought judicial review of the Commissioner's determination that he was not entitled to supplemental security income ("benefits") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1382, 1382c. The district court affirmed the Commissioner's decision. On appeal, Hickman argues that the Administrative Law Judge erred in concluding that evidence pertaining to his case does not support an award of benefits under the Act. Because the ALJ's decision violated Social Security regulations applicable to child disability cases by relying on non-medical testimony as opposed to medical evidence, we reverse.

## I.

Hickman was born three months prematurely in August, 1982. During the first few years of his life, surgeons operated on him several times to correct a cleft of the soft palate and to remove a benign tumor from his chest, as well as soft tissue and an extra toe from his right foot. In 1985, Hickman was diagnosed with Kippel–Trenaunay–Webber syndrome or elephantitis, a condition characterized by vascular inflammation, malformation of the lymphatic system, and hypertrophy of bone and tissue in one or more extremities. Supportive stockings were prescribed for his right foot and abdomen. Hickman first applied for benefits in 1985, and again in 1986, alleging that he had been disabled since birth. Various doctors reported that he had difficulty with balance and gait; apart from that, his extremities functioned normally and his condition was generally good. Each application for benefits was denied, and Hickman did not appeal on either occasion.

In 1990, Hickman again underwent surgery for removal of growths in his abdomen and chest. By then he was also experiencing frequent asthma attacks, which on at least two occasions required hospitalization for several days. He had stopped using the support stockings, which irritated his knee and caused superficial bleeding. Early in 1991, Hickman was operated on for a hernia. A few months later, his right foot again began increasing in size, until his entire right foot and calf were gigantized. In April and May 1992, he was hospitalized with chronic swelling of both legs. Support stockings were again prescribed for the gigantism, and compression ("pump") garments for the swelling. Hickman's condition then improved somewhat, but his ability to walk appears to have remained impaired.

In August 1992, Hickman reapplied for benefits and was subsequently informed that the Social Security Administration (SSA) had reopened his 1985 application in order to reevaluate it under *Sullivan v. Zebley*, 493 U.S. 521, 541, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990).[1] Ultimately, in 1996, the SSA promulgated new regulations to conform with *Zebley*. *See* 20 C.F.R. §§ 416.924 *et seq.*[2] Meanwhile, in 1992 and 1993, Hickman's reopened application was denied both initially and on reconsideration. This time, Hickman requested a de novo hearing before an Administrative Law Judge (ALJ). The hearing was held in April 1994. Hickman's attorney drew the ALJ's attention to 20 C.F.R. § 416.924(e), which states that a child is disabled if his impairment meets or is medically equal to an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. One of the listed impairments reads:

> 101.03 Deficit of musculoskeletal function due to deformity or musculoskeletal disease and one of the following:
>
> A. Walking is markedly reduced in speed or distance despite orthotic or prosthetic devices . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. B, § 101.03(A). Hickman's attorney argued that Hickman's condition met or equaled this listing, and that Hickman was thus disabled and entitled to benefits. The ALJ questioned Hickman (then age 12), who testified that he had "tumors" in both legs and that it was hard for him to walk—but that at school he received his best grade, an A, in physical education. Hickman asserted that he played basketball and ran relay races. His mother, however, testified that "he might say he is playing, but the kids are playing around him." Hickman further testified that he walked short distances to take the bus to school and back, and to and from classes in the

1. That case invalidated the old SSA regulations, under which children were entitled to benefits *only* if their impairment met or was medically equal to a listed impairment. Thus, the regulations failed to carry out the requirement set forth at 42 U.S.C. § 1382(c)(a)(3)(A) (1982), according to which supplemental security income "shall be provided to children with 'any . . . impairment of comparable severity' to an impairment that would make an adult 'unable to engage in any substantial gainful activity.'" *Zebley*, 493 U.S. at 541, 110 S.Ct. 885.

2. Later, in August 1996, Congress enacted the 1996 Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA), which set forth a new standard for determining whether a child is disabled. Under the PRWORA, a child is disabled if he has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(C)(I). In 1997, the SSA again promulgated new regulations, this time to conform with the new congressional standard. That standard is stricter than the *Zebley* standard of "comparable severity to an impairment that would make an adult unable to engage in any substantial gainful activity." The only regulation at issue on appeal, however—20 C.F.R. § 416.924(e), stating that a child is disabled if his impairment meets or is medically equal to an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1—is identical under both the post-*Zebley* regulations and the more recent PRWORA regulations. Therefore, the parties agree that the PRWORA has no effect on this case.

school. The ALJ, however, determined that Hickman's walking was not "markedly reduced in speed or distance," and terminated the hearing.

Two months later, Dr. Christopher Prevel, Hickman's treating orthopedist, referred Hickman for a comprehensive evaluation to Dr. Richard Lindseth, vice chairman of the Department of Orthopaedic Surgery at the Indiana University School of Medicine and a respected pediatric orthopaedist. Dr. Lindseth conducted electromyographic testing of Hickman's legs, and reported, at the conclusion of a lengthy "gait analysis interpretation," that Hickman's gait was "very slow, energy inefficient and would limit his walking ability and standing ability to a considerable degree." According to Dr. Lindseth, Hickman's speed and the length of his stride and step were reduced to approximately "two-thirds of normal." Dr. Lindseth estimated that Hickman's "maximum walking would be a block or two and that his standing on both legs would be limited to 15 to 20 minutes."

Hickman submitted Dr. Lindseth's report to the ALJ, and a supplemental hearing was held in October, 1994. Diana Klarich, Hickman's gym teacher, testified that if Hickman were tested "in standardized testing, he would flunk," but that she treated him differently from all the other students so as not to "burst the bubble" of his dreams. Hickman, she explained, "does not play basketball"; rather, he "puts himself in positions where the ball can be thrown to him." She worried that Hickman would incur "some major catastrophe with his body" by trying to engage in movements of which he was incapable. Again the ALJ and Hickman's attorney debated whether Hickman's walking was "markedly" reduced in speed. The ALJ stated that he "saw the point" of Dr. Lindseth's report and would consider the question. He indicated that he would have to "meet the equal of a medical expert" to be convinced, and asked the attorney to send him a copy of Dr. Lindseth's resume. He

stated that he was "not saying that the doctor that made the report is incapable of reaching a conclusion like that." But when Hickman left the room for the gym teacher's testimony, the ALJ remarked: "I cannot close my eyes ... [a]nd I don't think that he's markedly limited .... [W]hat I'm seeing is not what I'm reading."

A few days later, Hickman's attorney sent Dr. Lindseth's 22–page curriculum vitae to the ALJ. Then, in December 1994, Hickman was examined by Dr. Arthur Lorber, a doctor selected by the SSA. Dr. Lorber reported that Hickman suffered from gigantism of the left foot and of the entire right leg from the hip downward. He stated that Hickman was "currently ambulatory without assistive devices," but that his "prognosis is extremely guarded" and that "over time, he may well become wheelchair-bound." He indicated that Hickman could stand and/or walk for a total of only one hour in an eight-hour day, and that when he was old enough to work he would be restricted to "light, sedentary activities."

In July 1995, the ALJ issued his decision. The ALJ concluded that "the evidence of record" did not show that Hickman's impairments were medically or functionally severe enough to meet or equal any listed impairment. The ALJ noted Dr. Lindseth's opinion, but found that Hickman's own testimony "shows that, in actuality, his walking and standing abilities are not limited to that degree .... The claimant's testimony shows that his walking is not markedly reduced in speed and distance despite orthotic or prosthetic devise [sic], and the severity of his impairment does not meet or equal Listing 101.03A." The ALJ then engaged in a lengthy discussion of whether Hickman's impairment would disable an adult, following a complex procedure at the time laid out in (but since eliminated from) the Social Security regulations. In the course of that discussion, the ALJ cited statements of various doctors in Hickman's

medical record, and concluded that Hickman had only a "moderate" limitation of motor functioning and that, in the absence of other limitations, he did not have an impairment that would disable an adult. Therefore, the ALJ denied Hickman's application for benefits.

In July 1996, the Appeals Council denied Hickman's request for review, and Hickman then initiated his action in the district court. Hickman argued that the ALJ erred in discounting Dr. Lindseth's testimony and in concluding that his impairment did not meet or equal Listing 101.03. The district court rejected those arguments and affirmed the ALJ's decision. The court indicated that the ALJ "found that Hickman's testimony demonstrated that his walking was not markedly reduced in speed and distance (orthotic or prosthetic devices not being an issue), and that therefore, the limitation from his impairment did not meet or equal the severity required by Listing 101.03A." The court concluded that the ALJ "properly considered both medical and testimonial evidence in assessing the severity of Hickman's impairment."

## II.

On appeal, Hickman argues that the ALJ improperly determined that Hickman's impairment did not equal Listing 101.03 based on the testimony of Hickman and other witnesses, rather than on medical evidence alone. The Commissioner argues in reply that Hickman has waived the issue of whether his impairment is medically equivalent to Listing 101.03, because in the district court and before the ALJ he addressed only the issue of whether the impairment *meets* the listing. This argument is patently without merit, for a careful review of the record reveals that the equivalence issue was in fact raised on numerous occasions in the proceedings below. The Commissioner, however, also argues that the ALJ properly based his determination on non-medical testimony. We conclude that Hickman has the stronger argument, for the Social Security regulations pertaining to child disability claims—in particular, to the procedure to be followed in determining whether an applicant's impairment meets or equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1.—specifically require that the determination of equivalence is to be based on medical evidence alone.

■■ We review de novo a district court's dismissal of an appeal from a decision of the ALJ, but we will affirm the decision of the ALJ if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is evidence that a reasonable mind would accept as adequate to support a conclusion. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir.1997).

At the time Hickman sought and was denied benefits, the Social Security Act provided that "a child under the age of 18 is entitled to disability benefits if he suffers from a 'medically determinable physical or mental impairment of comparable severity' to one that would disable an adult." *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir.1997). The Commissioner had established a four-step procedure for determining whether a child's impairment was of "comparable severity." *Id.* (citing 20 C.F.R. § 416.924(b)). The Commissioner first considered whether the child was engaged in "substantial gainful activity." If the child was not engaged in such activity, the Commissioner then determined whether the child had an impairment or combination of impairments that was "severe." If the child had a severe impairment, the Commissioner next considered whether the impairment met or equaled in severity any impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A determination that a child met or equaled a listed impairment would result in a finding of disability. If the child had an unlisted but "severe" impairment, the Commissioner moved to the fourth step and conducted an "individualized functional assessment" (IFA) to determine whether the impairment would disable an adult. The IFA

was a kind of catch-all procedure, to be performed only if the impairment was determined not to meet or equal a listed impairment.

██ After the ALJ issued his decision, Congress changed the evaluation process for children's disability claims (cf. footnote 2, *supra*). Because Hickman's request for judicial review was still pending at the time Congress amended the statute, we apply the new law. *See, e.g., Brown v. Callahan,* 120 F.3d 1133, 1135 (10th Cir. 1997); *Jamerson v. Chater,* 112 F.3d 1064, 1065 n. 1 (9th Cir.1997). Essentially, the regulations implementing the new law eliminate the fourth, IFA step of the analysis.[3] But we have no need to address the ALJ's lengthy discussion of whether Hickman's impairment would disable an adult, for Hickman appeals only the issue of whether he meets or equals Listing 101.03A ("the 101.03A issue").

██ Before addressing the 101.03A issue, however, we pause to note the irregular manner in which the ALJ reached it. The ALJ did not first determine whether Hickman's impairment was severe, and then proceed to the 101.03A issue. Rather, the ALJ appears to have concluded, first, that Hickman's impairment did not meet or equal Listing 101.03A, and then on that basis to have reached the further conclusion that the impairment was not severe. We find it impossible to square the conclusion that Hickman's impairment is not severe with Dr. Lorber's statement that Hickman could stand and/or walk for a total of only one hour in an eight-hour day. Moreover, it is quite apparent that severity is merely a threshold requirement, for not all severe cases will (either medically or functionally) meet or equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. The threshold severity conclusion should not have been reached on the basis of the more precise (and hence more demanding) considerations applicable to the 101.03A issue.

### III.

██ Whether a claimant's condition equals a listed impairment is strictly a medical determination. 20 C.F.R. §§ 404.1526(b), 416.926(b). A finding of equivalence allows a "presumption of disability that makes further inquiry unnecessary." *Zebley,* 493 U.S. at 532, 110 S.Ct. 885. The pertinent Social Security regulations current in 1995 did contain the statement that "[w]hen we make an equivalence decision, we will consider all relevant evidence in your case record." 20 C.F.R. § 416.926a(a) (1995). The general tenor of § 416.926(a), however, made it quite clear that *medical* case records were considered the primary "relevant" form of evidence. When the SSA amended the regulations in 1997, it added a rule that explicitly eliminates any recourse to non-medical evidence. The new rule, § 416.926(b), informs the applicant that

> [m]edical equivalence must be based on medical findings. We will always base our decision about whether your impairment(s) is medically equal to a listed impairment *on medical evidence only.* Any medical findings in the evidence must be supported by medically acceptable clinical and laboratory diagnostic techniques. We will also consider the medical opinion given by one or more medical or psychological consultants designated by the Commissioner in deciding medical equivalence.

20 C.F.R. § 416.926(b) (emphasis added). Thus, the focus must be on medical evidence, which of course is not necessarily limited to the reports and testimony of physicians. On the basis of this rule, Hickman argues that the ALJ improperly discounted Dr. Lindseth's report in favor of evidence gleaned from non-medical witnesses during the hearing.

In rejecting Hickman's argument, the district court relied on this court's statement, in *Diaz v. Chater,* 55 F.3d 300, 306 n. 2 (7th Cir.1995), that "[i]n determining what a claimant can do despite his limita-

---

**3.** An expanded fall-back category of "functional," as opposed to "medical" equivalence, is also added. *See* 20 C.F.R. § 416.926(a) (1998).

tions, the SSA must consider the entire record, including all relevant medical and non-medical evidence, such as a claimant's own statement of what he or she is able or unable to do. 20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.945(a)." On appeal, the Commissioner also argues that *Diaz* compels a finding that the ALJ properly based his determination on non-medical testimony. Hickman, however, correctly points out that the quoted language from *Diaz*, and the two cited regulations, deal not with child disability impairment determinations, but with the question, appearing only in adult cases, of "residual functional capacity," i.e., how much the adult can do despite his impairment. For reasons that can be envisioned (e.g., the relative frailty of children as well as the notorious unreliability of their testimony), the regulations manifestly set a different standard for determining whether a child's impairment is equal to a listed impairment, and both the ALJ and the district court erred by brushing the standard aside.

■ It is true that Dr. Lindseth did not explicitly state that he believed Hickman's impairment met or equaled Listing 101.03A. The ALJ, however, acknowledged that Dr. Lindseth's opinion would not be inconsistent with the conclusion that Hickman was disabled. More importantly, apart from his reliance on non-medical testimony, the ALJ failed to provide any other reason for his decision that Dr. Lindseth's detailed report did not demonstrate that Hickman's impairment met or equaled Listing 101.03. The Social Security regulations state that particular weight is to be given to the "opinion of a specialist about medical issues related to his or her area of specialty." 20 C.F.R. § 416.927(d)(5). In addition, the ALJ must "sufficiently articulate his assessment of the evidence to assure us that [he] considered the important evidence ... [and to enable] us to trace the path of [his] reasoning." *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir.1996) (internal quotation omitted). Here, we are not convinced that the ALJ considered the important evidence, or that the reasons he

provided "build an accurate and logical bridge between the evidence and the result." *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir.1996).

■ The Commissioner also argues that Hickman does not wear an "orthotic or prosthetic device," and that such a device must be worn to meet or equal Listing 101.03, which states:

101.03 Deficit of musculoskeletal function due to deformity or musculoskeletal disease and one of the following:

A. Walking is markedly reduced in speed or distance despite orthotic or prosthetic devices ....

Hickman, on the contrary, points to medical publications that refer to compression stockings as orthotic devices. It is true that Dr. Lindseth indicated "prosthoses: none" and "orthoses: none" in computer-generated charts accompanying his report; but these remarks might mean that Hickman was not wearing his compression stocking during the tests. Thus, in the absence of an official Social Security definition, the question whether compression stockings count as orthotic devices would appear to be an open one. Moreover, Hickman properly argues that Listing 101.03 does not specifically require that the applicant use an orthotic or prosthetic device; rather, the word "despite" clearly means that *if* an applicant uses such a device, his walking is nonetheless markedly reduced in speed. This is so, because we can imagine cases where a patient's walking speed is markedly (or even entirely) reduced and yet doctors would see no point in prescribing such a device at all, and it would be absurd to exclude such cases on that account.

Finally, the Commissioner argues that Hickman has waived the orthotic-device argument because he improperly raised it in his district court reply brief. The argument is without merit. As the district court pointed out, the ALJ determined that Hickman's walking was not "markedly reduced in speed," and for that reason never reached the issue of whether he wore a prosthetic device. Hickman's brief

in the district court focused on that issue, and the reply brief addressed the orthotic-device issue only because it was first raised in the *Commissioner's* response. Therefore, the district court did not abuse its discretion by considering the issue.

### IV.

In contravention of the Social Security regulations pertaining to child disability cases, the ALJ relied on non-medical testimonial evidence to determine that Hickman's impairment did not equal Listing 101.03. The ALJ then reasoned backward from that determination toward a conclusion that Hickman's impairment was not severe. The reliance on non-medical testimonial evidence was inappropriate. The record leads us to conclude that Hickman does indeed suffer from a severe medical condition which is equivalent to the impairment set forth in Listing 101.03. The judgment of the district court, upholding the Commissioner's decision to deny benefits to Hickman, is REVERSED and the case is REMANDED to the district court with instructions to enter judgment in Hickman's favor.