

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-20-2001

# In Re: Gi Nam v.

Precedential or Non-Precedential:

Docket 00-4141

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"In Re: Gi Nam v." (2001). *2001 Decisions.* Paper 270.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/270

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed November 20, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-4141

IN RE: GI NAM

CITY OF PHILADELPHIA

v.

GI NAM

MARVIN KRASNY, CHAPTER 7 TRUSTEE; FREDERIC
BAKER, ASSISTANT U. S. TRUSTEE,

Trustees

CITY OF PHILADELPHIA,
        Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 00-cv-00347)
District Judge: Honorable Stewart Dalzell

Argued: July 27, 2001

Before: ROTH, BARRY and FUENTES,
Circuit Judges

(Filed: November 20, 2001)

Steven M. Schain, Esquire
2401 Pennsylvania Avenue
Philadelphia, PA 19130

Kenneth I. Trujillo, Esquire
City Solicitor

Marcia Berman, Esquire (Argued)
Deputy City Solicitor, Appeals Unit
City of Philadelphia
Law Department
One Parkway Building
1515 Arch Street, 17th Floor
Philadelphia, PA 19102-1595

 Attorneys for Appellant-City of
Philadelphia

Eric L. Frank, Esquire (Argued)
Miller, Frank & Miller
21 South 12th Street
640 PSFS Building
Philadelphia, PA 19103

 Attorney for Appellee-Gi Nam

Marvin Krasny, Esquire
Wolf, Block, Schorr & Solis-Cohen
1650 Arch Street, 22nd Floor
Philadelphia, PA 19103

 Attorney/Chapter 7 Trustee

Frederic J. Baker, Esquire
U.S. Department of Justice
Office of the Trustee
601 Walnut Street
The Curtis Center,
Suite 950 West
Philadelphia, PA 19106

 Attorney/Assistant U.S. Trustee

Karen A. Brancheau, Esquire
1421 Arch Street
Philadelphia, PA 19102

Attorney for Amicus-Appellant
PA District Attorneys Association

OPINION OF THE COURT

ROTH, Circuit Judge:

This bankruptcy appeal presents a question with potentially far-reaching implications for the States' administration of their criminal justice systems. It is also one of first impression in this Circuit. The issue is whether the debt to a State of a bond surety for a defendant who fails to appear is dischargeable in the surety's Chapter 7 bankruptcy. We decide the question here only in the context of the case before us: The bond surety is a relative of the non-appearing defendant.

We conclude that the decision of the District Court, holding such a debt dischargeable, contradicts the plain meaning of the applicable statute. In light of the problems that such a holding might inflict upon the functioning of the bail release system, we will reverse the District Court's decision.

I. FACTS

David Nam (David), the son of the debtor, Gi Nam (Nam), was charged in Philadelphia, Pennsylvania, on September 22, 1997, with a number of offenses, including murder, robbery and burglary in connection with the shooting death of Anthony Schroeder during a March 1997 robbery. Bail was set at $1 million, conditioned on a 10% cash payment by the surety and an agreement by the defendant and the surety to assume legal responsibility for paying the full amount of the bail to the Commonwealth of Pennsylvania. By a Certification of Bail and Discharge, dated January 12, 1998, executed by both Nam and David, Nam agreed to serve as surety for the bail. The operative portion of the Certification reads as follows:

WE THE UNDERSIGNED, defendant and surety, our successors, heirs and assigns, are jointly and severally bound to pay the Commonwealth of Pennsylvania in the sum of ONE MILLION dollars ($1,000,000). WE are bound by the CONDITIONS of this bond as shown on both sides of this form.

Pursuant to the terms of the bond, both Nam and David agreed that the latter would appear in court at all required times and that Nam, as surety, would notify the court in writing of any change in David's address. The Certification also states, "If defendant performs the conditions as set forth herein, then this bond is to be void, otherwise the same shall remain in full force and this bond in the full sum thereof shall be forfeited." Additionally, both Nam and David authorized the entry of a judgment by confession against them in the amount of the bond, regardless of whether a default of the bond conditions occurred.

On March 12, 1998, David Nam failed to appear in court for a pre-trial status listing in his criminal case. Consequently, on April 6, 1998, the Court of Common Pleas of Philadelphia, Criminal Section, ordered the bail bond forfeited pursuant to the terms of the bond agreement, the Pennsylvania Rules of Criminal Procedure, and local court rules.[1] The criminal court entered a judgment against Nam as surety on the forfeited bond in the amount of the bail, plus court costs: $1,000,018.50.[2] The notice of entry of judgment against Nam, which bears the caption of David's criminal case, reads in pertinent part:

Bail in the amount of $1000000.00 has been sued out and judgment entered in the amount of $1000018.50 including cost of $18.50 due to failure of the above named defendant to appear for trial on 3/12/98 in Room 604 CJC 1301 Filbert St.

_____

1. See Pa.R.Crim.P. 4016(A)(2)(a); Rule 510A of the Philadelphia Court Rules for the Criminal Division of the Court of Common Pleas.

2. Given that Nam had initially posted $100,000, or 10% of the total bail, in cash, it is not clear why the court did not enter a judgment in the amount of $900,018.50. That question, however, is not before this Court and we do not address it.

4

> You may reduce your financial responsibility by
> producing the defendant forthwith and filing a petition
> with the Clerk of Quarter Sessions to vacate, in total or
> in part, the judgment against you.

When David was released on bond, Nam provided him with living quarters and the necessities of life. Some time before his pre-trial status hearing, David fled to South Korea where his paternal grandmother resides. It appears that, once David had fled to Korea, Nam followed him there and paid a lawyer $10,000 to represent David. See Krasny v. Gi and Yeoung Nam, 245 B.R. 216, 220, 225-26 (Bankr. E.D. Pa. 2000). Indeed, Nam testified at a S 341 creditors hearing before the trustee on August 9, 1999, that he had provided David with such assistance. See id. at 220.3 David remains a fugitive.

On May 19, 1999, Nam petitioned for bankruptcy under Chapter 7 of the Bankruptcy Code. Nam listed the City of Philadelphia as the creditor on a claim in the amount of $1,045,000, arising from the bail bond security. On August 27, 1999, the City of Philadelphia filed a Complaint in Adversary, alleging that, although Nam had listed the bail bond judgment as an "unsecured non-priority claim" in the schedule he had filed in the bankruptcy case, such debt was not in fact dischargeable pursuant to 11 U.S.C. S 523(a)(7). On September 2, 1999, Nam filed a motion to dismiss the complaint pursuant to Fed.R.Civ.P. 12(b)(6), arguing that the bail bond debt was dischargeable.

_____

3. Because these facts concerning Nam's possible collusion with his son are not part of the record in the instant case, we do not rely upon them in deciding this appeal. Indeed, it follows as a matter of law from our holding here that we need not reach the question whether Nam has aided his son and thereby engaged in `wrongdoing' sufficient to forfeit his right to seek dischargeability under the District Court's rule. Nevertheless, we include this information here to illustrate the difficulty of administering a rule such as the one formulated by the District Court that would make the wrongdoing of the debtor dispositive of the question of dischargeability. See Sections II and IV.A, infra. Indeed, given Nam's colorable misconduct, it would seem that the District Court misapplied the rule in the very case in which it announced it.

## II. PROCEDURAL HISTORY

The Bankruptcy Judge granted Nam's motion to dismiss on December 8, 1999. The Bankruptcy Court rejected the City's arguments that the judgment against Nam satisfied the elements of S 523(a)(7) and that forfeited bail bonds must be exempted from discharge in order to safeguard the integrity of the bail and criminal justice systems. The court construed S 523(a)(7) narrowly, holding that it only exempts from discharge "obligations imposed upon the debtor as punishment for his wrongdoing" and that the judgment against Nam arose "because a condition of the bond was breached and not because the surety is being punished."

The District Court affirmed the Bankruptcy Court's judgment, holding that S 523(a)(7) excepts from discharge only sanctions that are penal, as opposed to civil, in nature and that result from the debtor's own wrongdoing. The District Court further found that Nam never assumed any independent obligation to produce David in court and, thus, that Nam committed no wrongdoing. Consequently, the court held the debt dischargeable. Moreover, the District Court enunciated a more general proposition concerning the application of S 523(a)(7): A judgment against a surety, arising from a forfeited bail bond, will be exempted from discharge under S 523(a)(7) only if the surety played some affirmative role in the defendant's failure to appear. This appeal followed.

## III. JURISDICTION

The Bankruptcy Court had jurisdiction under Title 11 of the United States Code, 28 U.S.C. S 1334(b), as a complaint to determine the dischargeability of a debt. The District Court had jurisdiction pursuant to 28 U.S.C. S 158(a) and we have jurisdiction of this appeal pursuant to 28 U.S.C. S 158(c) and 28 U.S.C. S 1291. We exercise plenary review over a district court's bankruptcy decision. Commonwealth of Pa. Dept. of Environmental Resources v. Tri-State Clinical Laboratories, Inc., 187 F.3d 685, 687 n.2 (3d Cir. 1999).

IV. DISCUSSION

A. SECTION 523(a)(7)

The sole statutory provision at issue in this appeal is the exception to discharge provided by 11 U.S.C. S 523(a)(7), which states in pertinent part:

> (a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt--
>
> . . . .
>
> (7) to the extent such debt is for a [1] fine, penalty, or forfeiture [2] payable to and for the benefit of a governmental unit, and [3] is not compensation for actual pecuniary loss, other than a tax penalty. . ..

11 U.S.C. S 523(a)(7) (emendations added). In order to "determine whether [a debt] is dischargeable under S 523(a)(7), we must determine whether [such] debt meets the three requirements of the section." In re Rashid, 210 F.3d 201, 206 (3d Cir. 2000). Here, the parties do not dispute that Nam's debt is payable to and for the benefit of a governmental unit (either or both the Commonwealth of Pennsylvania and the City of Philadelphia) or that the $1 million bail bond debt is not compensation for any pecuniary loss by such governmental entities or any other party.4 Consequently, we need only concern ourselves with the construction of the first prong of S 523(a)(7): the "fine, penalty or forfeiture" provision. The City argues that Nam's debt is a "forfeiture" of the bond amount arising from David's failure to appear and, therefore, falls within the plain language of the statute. Nam on the other hand contends that the statute only creates an exception for "penal" debts, a category into which Nam's debt assertedly does not fall.

_____

4. As the District Court correctly noted, the $18.50 in costs might be regarded as compensation for a pecuniary loss on the part of the court system. In what follows, we assume that is so, and confine our discussion to the remaining $1 million (arguably as reduced by the $100,000 that Nam has already paid). See District Court opinion at note 10; note 2, supra.

7

Following the teaching of the Supreme Court, we have held that the "starting point of any statutory analysis is the language of the statute itself." Commonwealth of Pa. Dept. of Environmental Resources v. Tri-State Clinical Laboratories, Inc., 178 F.3d 685, 688 (3d Cir. 1999), citing Pa. Dept. of Pub. Welfare v. Davenport, 495 U.S. 552, 557-58 (1990); Kelly v. Robinson, 479 U.S. 36, 43 (1986). Consequently, our analysis of the "fine, penalty or forfeiture" prong of S 523(a)(7) must begin with the plain language of the statute.

On its face, the judgment against Nam seems to come within the plain meaning of the term "forfeiture." For example, "forfeiture" is defined in Black's Law Dictionary as "a divestiture of specific property without compensation; . . . [a] deprivation or destruction of a right in consequence of the nonperformance of some obligation or condition." BLACK'S LAW DICTIONARY 650 (6th Ed. 1990). "Forfeiture" is defined by Webster's Dictionary as "the divesting of the ownership of particular property of a person on account of the breach of a legal duty and without any compensation to him: the loss of property or money on account of one's breach of the terms of an agreement, bond, or other legal obligation." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY (1971). Clearly, the judgment against Nam arose from David's nonperformance of his obligation to appear in court and Nam's breach of his duty to produce David for trial. Moreover, the judgment[5] does not compensate the City for any pecuniary loss suffered but instead serves as an incentive to the surety to prevent the defendant's flight and to produce him insofar as the surety is capable.

The District Court, however, attempted to construe S 523(a)(7) using traditional canons of construction. We find that this attempt at construction results in fact in writing the term "forfeiture" out of the statute.

As a preliminary matter, we note that the District Court's conclusion that a forfeiture must be "penal" in order to come within the exception conflicts with the plain language of the statute. Nothing in that language equates a forfeiture with a penalty. Quite the contrary, "penalty" and

_____

5. Excluding the $18.50 in court fees. See notes 2 and 4, supra.

8

"forfeiture" are two distinct terms within the phrase "fine, penalty, or forfeiture." Citing Kelly v. Robinson, 479 U.S. 36 (1986) and In re Collins, 173 F.3d 924 (4th Cir. 1999), the District Court reasoned that S 523(a)(7) excepts from dischargeability only those forfeitures which are "penal sanctions that result from the debtor's wrongdoing." Finding no such qualification in S 523(a)(7), we disagree with the District Court's reasoning. We do not interpret Kelly to imply that the "fine, penalty or forfeiture" prong of S 523(a)(7) is restricted in scope to except from dischargeability only obligations of a penal nature. Furthermore, to the extent the Fourth Circuit so interpreted Kelly in In re Collins, we decline to adopt a similar rule here.

The Kelly court addressed the question whether "restitution obligations, imposed as conditions of probation in state criminal proceedings, are dischargeable in proceedings under Chapter 7 of the Bankruptcy Code." Kelly, 479 U.S. at 38. The Supreme Court held that such restitution obligations, although not excepted expressly by S 523(a)(7), fall within the S 523(a)(7) exception and, therefore, are not dischargable. See id. at 53. The Supreme Court based this holding on findings that (1) S 523(a)(7) "creates a broad exception for all penal sanctions" and (2) restitution obligations such as the one at issue in Kelly constitute "penal sanctions." Id. at 51-53. Kelly, therefore, stands for the proposition that S 523(a)(7) excepts from dischargeability some penal sanctions that technically are neither fines nor penalties nor forfeitures. However, it does not follow logically from this proposition that S 523(a)(7) excepts only sanctions of a penal nature.

The Kelly court addressed the penal nature of restitution obligations and the history, object and policy of S 523(a)(7) because the plain language of that statute fails to address "restitution obligations" expressly. The instant appeal is distinguishable from Kelly insofar as "forfeitures" -- the type of obligation alleged to be at issue -- are excepted expressly from discharge by S 523(a)(7). Because S 523(a)(7) expressly excepts forfeitures without regard to penal nature, we need not address this characteristic in assessing the applicability of S 523(a)(7) to Nam's alleged forfeiture.

9

Returning to the District Court's use of the canons of statutory construction, we find its reliance on the canon ejusdem generis to lead to an erroneous interpretation of the statute. According to that canon, "where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." United States v. Weadon, 145 F.3d 158, 160 (3d Cir. 1998). Nevertheless, the District Court's attempt to render "forfeiture" a more general term than "penalty" is strained and unconvincing. The alternative dictionary definitions of "forfeiture" which the District Court cites span varying degrees of generality. Although Black's Dictionary characterizes "forfeiture" as a "comprehensive term," it also defines it as a "divestiture of specific property" -- language which resembles that dictionary's alternative definitions of "penalty" in both its broadness and its specificity; "penalty" is an "elastic term with many different shades of meaning" but is nevertheless "generally confined to pecuniary punishment." BLACK'S LAW DICTIONARY 650, 1133 (6th ed. 1990).

It is not necessary to make here the numerous similar observations possible with respect to the dictionary definition of "fine"; it suffices merely to note that the generality of the terms in question cannot be ascertained with any reliability on the basis of their dictionary definitions and that it is difficult to discern any lexical justification for the assertion that "forfeiture" is a more general term than "penalty." It follows that the canon ejusdem generis is inapplicable to this case. Moreover, even were it applicable, it could not be used to reach the result of the District Court -- the transformation of the term "forfeiture" into surplusage -- because ejusdem generis "cannot be employed to render general words meaningless." Ferrara & DeMercurio, Inc. v. St. Paul Mercury Ins. Co., 169 F.3d 43, 52 (1st Cir. 1999), quoting United States v. Alpers, 338 U.S. 680, 682 (1950).

Similarly flawed is the District Court's application of the maxim noscitur a sociis to subsume the term "forfeiture" within the earlier term "penalty." The Supreme Court has stated that "[t]he maxim noscitur a sociis, that a word is

10

known by the company it keeps, while not an inescapable rule, is often wisely applied where a word is capable of many meanings in order to avoid the giving of unintended breadth to Acts of Congress." Folger Adam Sec., Inc. v. DeMatteis/MacGregor JV, 209 F.3d 252, 258 (3d Cir. 2000), quoting Jarecki v. G.D. Searle & Co., 367 U.S. 303, 307 (1961). Put differently, the maxim provides that the meaning of an ambiguous statutory term may be derived from the meaning of the accompanying terms. In re Continental Airlines, Inc., 932 F.2d 282, 288 (3d Cir. 1991). Were the maxim applicable here, it would indeed be possible to hold that the term "forfeiture" should be read as "penal forfeiture" in light of the term's proximity to the word "penalty." S 523(a)(7). However, noscitur a sociis can have no application in this context because "[w]hen Congress has separated terms with the conjunction `or,' it is presumed that Congress intended to give the terms`their separate, normal meanings.' " In re Continental Airlines, 932 F.2d at 288, quoting Garcia v. United States, 469 U.S. 70, 72 (1984). Consequently, we are again referred to the plain meaning of the term "forfeiture" which, as we have indicated supra, encompasses debts such as Nam's.

B. STATE LAW CONTEXT AND HISTORY

As is often the case, such an analysis of the "plain meaning" of the statutory language in a vacuum, while helpful, cannot of itself provide an adequate guide to the proper construction of the statute. To buttress the preceding discussion, we now turn to the state-law context of S 523(a)(7) and its history. As Nam points out in his appellate brief, absent explicit Congressional intent to incorporate state law, the meaning of a term in a federal statute is a question of federal law. See In re Wilson, 252 B.R. 739, 742-43 (B.A.P. 8th Cir. 2000); accord In re Gianakas, 917 F.2d 759 (3d Cir. 1900) (federal law determines dischargeability under 11 U.S.C. S 523(a)(5)). Nevertheless, this fact does not render the characterization of debts such as Nam's under applicable state law wholly without meaning. Although the label that state law affixes to a certain type of debt cannot of itself be determinative of the debt's character for purposes of the federal

11

dischargeability provisions, such state-law designations are at least helpful to courts in determining the generic nature of such debts under the law that most directly governs their creation, e.g., whether they are penal or civil, fines or forfeitures.

In the case of Nam's debt, Pennsylvania law defines a judgment entered against a surety as a result of his failure to produce the defendant in court as a "forfeiture." Rule 4016 (A)(2)(a) of the Pennsylvania Rules of Criminal Procedure, entitled "forfeiture," authorizes the bail authority to "order the case or other security forfeited" as a sanction for the defendant's violation of a condition of the bail bond. Local court rules also use the term "forfeiture"; Rule 510A of the Philadelphia Court Rules for the Criminal Division of the Court of Common Pleas authorizes the court to order bail to be "forfeited" when the defendant fails to appear for court and states that the surety is obligated to produce the defendant at all required court appearances "under penalty of forfeiture of his bail bond." Consequently, the District Court correctly conceded that the $1 million judgment against Nam is characterized as a forfeiture under state law.

The history of S 523(a)(7) strongly suggests that Congress intended the sort of forfeiture entered against Nam to come within the exemption from dischargeability set forth in that section. Section 523(a)(7) came into being in 1978, when Congress enacted the present Bankruptcy Code. The parties to this litigation do not dispute that, in enacting the Code, Congress codified case law exempting certain penalties and forfeitures from discharge under the former Bankruptcy Act of 1898. Moreover, such codified case law included a line of authority holding that obligations against sureties arising from forfeited bail bonds were nondischargeable. In what follows, we will review the fundamental historical rationale for and the development of S 523(a)(7) against the background of the prior 1898 Act case law from which that statute emerged.

In general, a discharge granted to a debtor in a Chapter 7 bankruptcy proceeding voids all judgments previously applicable to the debtor, except for debts that are exempt from discharge under 11 U.S.C. S 523, which"expresses

12

Congressional policy that certain debts should be excluded from discharge because of overriding public policy relating to the type of the debt, the manner in which liability for it was incurred, or the underlying social responsibility that it represents." Bankruptcy Service, Lawyers Edition, Ch. 27: Code 523, S 27:4 at 27-90 (West 1999). Such "[d]ischargeability exceptions reflect a decision by Congress to allow certain competing public interests to override the `fresh start' purpose of bankruptcy." Id . As the Supreme Court has stated, "Congress evidently concluded that the creditors' interest in recovering full payment of debts in [the] categories [encompassed by S 523(a)] outweighed the debtors' interest in a complete fresh start." Grogan v. Garner, 498 U.S. 279, 287 (1991).

Although the 1898 Act contained no provision specifically forbidding the discharge of fines, penalties, or forfeitures due the government, it did provide that certain types of debts were nondischargeable. See Bankruptcy Act of 1898, SS 17, 63 (repealed 1978). Pursuant to S 57j of the 1898 Act, penalties or forfeitures owed to the government were only allowed as a claim in bankruptcy to the limited extent that such penalties or forfeitures compensated the government for a pecuniary loss. Section 57j provided:

> Debts owing to the United States, a State, a county, a district, or a municipality as a penalty or forfeiture shall not be allowed, except for the amount of the pecuniary loss sustained by the act, transaction, or proceeding out of which the penalty or forfeiture arose.

30 Stat. 561, 11 U.S.C. S 93 (repealed 1978).

It is evident then that in enacting this provision, Congress intended to protect general creditors against the reduction of debts owed them by limiting the debts allowable to the government to its actual pecuniary losses. A leading treatise on bankruptcy explained the policy considerations underlying S 57j in the following terms:

> It is perfectly conceivable that a bankruptcy law is anxious not to curtail this sovereign power to mete out punishment and therefore treats claims for penalties on a footing of equality with, if not of precedence over, other claims. Yet there is on the other hand the natural

13

tendency and task of the bankruptcy law to mitigate as far as possible the losses to be sustained by creditors, and under this aspect there is an undeniable equity in the postulate that participation in the estate should be denied to a creditor who has neither in some degree contributed to the distributable funds (e.g., by the governmental protection on which taxation is supposed to be based), nor has suffered a pecuniary loss by parting with something in money's worth. It is this consideration for the bankrupt's creditors that pervades S 57j.

3 Collier on Bankruptcy, P 57.22[1], at p. 382 (14th ed. 1977).

The notion that the conflicting interests of protecting the government's power to punish and defending the rights of general creditors should be thus balanced is a recurring theme of the case law under the 1898 Act. See, e.g., Simonson v. Granquist, 369 U.S. 38, 40 (1962) (stating that S 57j "plainly manifests a congressional purpose to bar all claims of any kind against a bankrupt except those based on a `pecuniary' loss. So understood, this section, which has been a part of the Bankruptcy Act since its enactment in 1898, is in keeping with the broad aim of the Act to provide for the conservation of the estates of insolvents . . . ."); Goggin v. United States, 140 F.Supp. 557, 560 (Ct. of Claims 1956) ("[w]hen Congress, in [S57j], drew a distinction between a penalty of forfeiture, on the one hand, and the pecuniary loss sustained, on the other, we think it meant that an arbitrarily set amount . . . should not be put in competition with the claims of the ordinary creditors of the bankrupt."), vacated on other grounds, 152 F.Supp. 78 (Ct. of Claims 1957).

Thus, under pre-1978 bankruptcy statutes and judicial decisions, penalties and forfeitures owed to the government were, for the most part, not allowed as claims. The correlative question whether such debts should be dischargeable was firmly settled by the judiciary long before the enactment of the Code in 1978. Because penalties and forfeitures owed to the government were essentially not allowable, courts generally exempted them from discharge as a way of holding debtors responsible for such penalties

14

and forfeitures while avoiding interference with the results of state criminal proceedings. See United States v. Ron Pair Enters., Inc., 489 U.S. 235, 245 (1989); Kelly, 479 U.S. at 44-47; Tri-State Clinical Laboratories, 178 F.3d at 695. As the Kelly Court stated, "[d]espite the clear statutory language, most courts refused to allow a discharge in bankruptcy to affect the judgment of a state criminal court." Kelly, 479 U.S. at 45. This principle of nondischargeability of penalties and forfeitures payable to the government and not in remuneration of a pecuniary loss was so "uniformly accepted" by 1978 that Congress incorporated it into the Code as an explicit statutory exception to dischargeability in S 523(a)(7). Ron Pair, 489 U.S. at 245 n.8; Kelly, 479 U.S. at 44-46, quoting 1A Collier on Bankruptcy P 17.13, at 1609-10 & n.10 (14th ed. 1978); id. at 51 (recognizing that S 523(a)(7)"codified the judicially created exception to discharge for fines [, penalties and forfeitures]").

C. CASE LAW

The line of authority underlying this judicially-created exception is an old and venerable one, stretching back to the turn of the twentieth century. In In re Caponigri, 193 F. 291, 292 (S.D.N.Y. 1912), Judge Learned Hand addressed the issue whether a claim of the United States on a forfeited recognizance for bail in a criminal case, asserted against a debtor who had acted as surety for a defendant who fled, was allowable, given that it constituted a penalty or forfeiture under former S 57j. Significantly, in Caponigri, as in the instant case, the debtor was a surety for the criminal defendant and not the defendant himself. Judge Hand held that "the recovery on a recognizance for bail is essentially the recovery of a penalty, and is a forfeiture." 193 F. at 292. Judge Hand adhered to the concept of a penalty being by definition unrelated to any pecuniary loss; the amount of a penal obligation, he wrote, "is measured neither by the obligee's loss nor by the valuation placed by him upon what he has given in exchange." Id.

In the years that followed, Caponigri came to be viewed as controlling authority on the question of the allowability of forfeited bail bonds. See, e.g., In re Lake, 22 Am. Bankr.

15

N.S. 168 (F. Ref. Minn. 1932). More significantly, however, the Caponigri decision provided an analytical framework for defining debts. This framework was applied to determine the allowability of types of penalties and forfeitures other than bail bonds. Many cases applied Judge Hand's penalty test to find obligations to be disallowed where the obligations were imposed for coercive or regulatory purposes and were not proportionate to any actual pecuniary loss. See, e.g., In re James Butler Grocery Co., 22 F.Supp. 993, 994-95 (E.D.N.Y. 1938); In re Erlin Manor Nursing Home, Inc., 36 B.R. 672, 678-79 (Bankr. D. Mass. 1984); In re Idak Corp., 19 B.R. 765, 772-75 (Bankr. D. Mass. 1982).

Moreover, the reasoning of Caponigri was applied to dischargeability as well as to allowability. As early as 1914, a court in New York held that claims by governments against sureties for judgments on forfeited bail bonds were nondischargeable under the 1898 Act. See In re Weber, 212 N.Y. 290, 106 N.E. 58 (1914). See also Commonwealth v. McMillen, 1 Ky. Rptr. 270 (Ct. of Appeals of Ky. 1880) (accord). In Weber, the debtor sought the discharge of a judgment entered against him on a forfeited bail bond. Following Judge Hand's decision in Caponigri, the court found the obligation not to be allowable. See Weber, 212 N.Y. at 291-92, 106 N.E. at 59. The court went further, however, ruling that because the obligation was not allowable, it was also not dischargeable: "It could not have been intended by the Bankruptcy Act that a bankrupt should be discharged of the payment of a debt which was not allowable." Id.

Both factually6 and legally, Weber is on all fours with the

_____

6. The opinion does not make clear whether the debtor was the criminal defendant or a surety for another. Nevertheless, the Weber Court's wholesale adoption of Judge Hand's analysis in Caponigri suggests that the cases were factually identical. Additionally, at least one bankruptcy treatise suggests that the debtor in Weber was in fact a surety. See Harold Remington, A Treatise on the Bankruptcy Law of the United States, vol. 8, S 3304 at 156 (6th ed. 1956) (citing Weber as authority for
the proposition that "[j]udgment against the bondsman on an appearance bond in a criminal case, forfeiting the bond, is . .. not dischargeable")

16

instant case. Moreover, the parties to this appeal agree, and the Supreme Court instructed in Kelly, that cases under the 1898 Act, relating to the dischargeability of certain fines, forfeitures and penalties, comprise part of the judicially-created body of exceptions that Congress codified in S 523(a)(7), and therefore guide courts' dispositions of such cases. As the District Court stated, "courts interpreting the present Bankruptcy Code have referred to the practices under the Act of 1898 that preceded it, and in construing provisions of the Code that were codifications of earlier judge-made law, as S 523(a)(7) evidently was, courts interpret the codification to match the prior judge-made law absent evidence of specific intent that it be interpreted otherwise, see Kelly, 479 U.S. at 44, 47." District Court Opinion at 18 n.19. Nevertheless, the District Court failed to follow this teaching insofar as it entirely ignored Weber, notwithstanding the City's heavy reliance on that case in its reply brief.

The District Court sought to explain its refusal to rely upon pre-Code jurisprudence with the assertion that practice relating to the dischargeability question at issue was "mixed" during that period. This view is b ased upon a single case, United States v. Hawkins, 20 F.2d 539 (S.D. Cal. 1927). Hawkins, however, conflicts with all other judicial and scholarly authority which recognizes the exception to dischargeability for penalties and forfeitures -- an exception which the District Court itself acknowledged as axiomatic in its opinion.7 Given that Hawkins is a summary opinion of only two paragraphs, bereft of analysis

_____

(emphasis added). Regardless of identity of the debtor in Weber, however, that decision still governs the instant case because of the broad scope of its underlying rationale: "It could not have been intended by the Bankruptcy Act that a bankrupt should be discharged of the payment of a debt which was not allowable." Weber, 212 N.Y. at 291-92, 106 N.E. at 59.

7. See In Re: Gi Nam, 254 B.R. 834, 846 n.25 (E.D. Pa 2000) (noting "pre-Code judicial practices by which courts found that judgments of state criminal courts were not discharged in bankruptcy despite that the strict application of the letter of the Act of 1898 would have discharged them" (citing Kelly, 479 U.S. at 44-48)).

17

and lacking any references to Caponigri, Weber, McMillen, or the judicially-created exception to dischargeability for penalties and forfeitures, it is virtually worthless as a precedent.8 Even if we could properly rely on Hawkins, the decision by its terms stands only for a very narrow proposition not directly applicable here: S 17 of the 1898 Act provides no exception whatever to dischargeability for penalties and forfeitures. We conclude that the District Court erred in relying on Hawkins for the proposition that pre Code practice concerning the dischargeability of penalties and forfeitures was "mixed."

D. PUBLIC POLICY CONSIDERATIONS

The clarity and weight of the judicial authority discussed supra are great enough that such authority provides a sufficient basis for deciding this appeal. Nevertheless, the implications of this case for the administration of justice are potentially of such a magnitude that it is necessary to devote more than passing attention to the public policy considerations underlying the dischargeability question. These issues range from socioeconomic equity to the ability of the several States to administer their justice systems.

First and foremost among these policy concerns is the issue of socioeconomic fairness. Let us return to some critical facts presented by this case -- facts emphasized by neither party to this litigation. Here, Nam, the father of the fugitive defendant, had sufficient means to pay $100,000 in cash and to assure payment of the remaining $900,000 in the event of forfeiture. As the Pennsylvania District Attorneys Association points out in its amicus brief, the parents and relatives of the typical accused felon in Philadelphia, who is more likely than not economically disadvantaged, do not have such resources at their

_____

8. The Bankruptcy Court here recognized the limited usefulness of Hawkins, noting that the "court's decision in United States v. Hawkins . . . consists of only two paragraphs. The court simply held that none of the four exceptions to discharge listed in S 17 of the Act covered the debt
of a surety on a bail bond. It did not analyze whether the words `fine, penalty or forfeiture' cover a surety's obligation on a bail bond." In Re: Gi
Nam, 255 B.R. at 155 n.7.

18

command. The average defendant is forced to remain in jail while awaiting trial, all but certainly experiencing far poorer living conditions than the defendant free on bail. At least one bankruptcy court has discussed this danger:

> Eventually, freedom on bail would be restricted to those defendants who could pay cash up front, i.e., wealthy defendants only. Poor and middle class defendants would be forced to languish in overcrowded jails. [Among t]he end results would be . . . inequitable discrimination against those defendants not fortunate enough to possess thousands of dollars in ready cash.

In re: Bean, 66 B.R. 454, 457 (Bankr. D.Colo. 1986). The District Court's decision, therefore, opens the door to accusations that the Philadelphia justice system treats the wealthy and the poor differently.

Also of concern are the implications of the District Court's decision for principles of federalism and comity that must be respected in order to insure the proper functioning of the several States' justice systems. In Kelly , the Supreme Court stated that "we must consider the language of S 523 in light of the history of bankruptcy court deference to criminal judgments and in light of the interests of the States in unfettered administration of their criminal justice systems." Kelly, 479 U.S. at 43-44. Throughout its opinion, the Supreme Court repeatedly emphasized the significant deference due to state criminal proceedings in the context of federal bankruptcy law. Discussing S 523, the Court wrote, "[o]ur interpretation of the [Bankruptcy] code also must reflect the basis for this judicial exception, a deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings." Id. at 49 (citation omitted). The District Court's opinion fails to take account of these important considerations, and, insofar as its decision in favor of Nam sanctions the use of federal bankruptcy laws to evade the financial consequences of noncompliance with Pennsylvania's bail system, it constitutes the very sort of federal interference with a State's administration of justice which the Supreme Court condemned in Kelly.

The course that the District Court urges entails not only

19

relatively abstract problems such as these, but also potentially grave concrete consequences for the States' administration of their respective criminal justice systems and the proper functioning of the bail system. In terms of a basic behavioral incentive analysis, the rule that the District Court proposes would throw into doubt the viability of the current bail system by creating perverse incentives for sureties who are also relatives of the defendant, as well as for such defendants themselves. Once a criminal defendant becomes convinced that his relative will be able to escape financial responsibility (other than the negative, albeit temporary and comparatively lesser, consequences of the bankruptcy filing itself) for the bail amount if the defendant flees, the incentive to appear for trial diminishes sharply. Similarly, given that the surety would no longer face a sizable debt should the defendant flee (again, leaving aside the consequences of a bankruptcy), the surety would no longer be deterred from assisting the defendant in his flight. This is a particularly serious risk in cases, such as the Nams', in which the criminal defendant faces execution. Many a father might consider the opportunity to purchase his son's life at the cost of enduring a bankruptcy proceeding to be an attractive bargain.[9]

The States' bail systems are "central to our modern criminal procedure"; any threat to their efficacy and integrity damages the States' criminal justice systems. In

_____

9. Of course, these concerns do not come into play when a professional bail bondsman acts as surety for a criminal defendant. In such cases, the professional bondsman is not inherently interested in helping the defendant avoid punishment; nor is the defendant likely troubled by the impact of his actions on the bondsman's finances. Professional bondsmen are compensated in advance through fees for the risk that the defendant will flee; consequently, the forfeiture of a bail bond is, from the perspective of the bondsman, merely an anticipated cost of doing business. See In re Collins, 173 F.3d 924, 932 (4th Cir. 1999). Nevertheless, the instant case does not present, and we therefore do not address ourselves to, the question of professional sureties. For that reason, we find both Collins and the recent Fifth Circuit decision in In re
Hickman, 260 F.3d 400 (5th Cir. 2001) inapplicable to the case at bar in part because those cases involved commercial bail bondsmen. It should be noted that many jurisdictions, including Philadelphia, do not provide for professional bondsmen.

20

re: Bean, 66 B.R. at 456-57; see Commonwealth v. Truesdale, 449 Pa. 325, 335-36, 296 A.2d 829, 834 35 (1972) (discussing purpose and importance of bail system); Ruckinger v. Weicht, 356 Pa. Super. 455, 457, 514 A.2d 948, 949 (1986) (same). Were we to permit the rule that the District Court proposes, the effectiveness of the bail system would be reduced because the risk of flight by criminal defendants released on bail under bonds executed by nonprofessional sureties would increase. The adverse consequences of the proposed rule are obvious. They include hampering the States' ability to prosecute criminal defendants, thereby increasing the danger such persons pose to the public; imposing increased costs on the States for locating and capturing fugitives; increasing the costs of pre-trial detention for defendants who otherwise would be released on bail; and exacerbating the already serious problem of overcrowding in detention facilities. Such costs, however "difficult to quantify," are, contrary to the District Court's view, hardly "marginal" considerations.

V. CONCLUSION

For the foregoing reasons, we will reverse the decision of the District Court and remand this case for further proceedings consistent with this opinion. We hold that, in light of the statute's plain language, its history, and applicable case law, 11 U.S.C. S 523(a)(7) does not except from discharge in a Chapter 7 bankruptcy a bail bond forfeiture judgment entered against a family surety for failure to produce the defendant for trial.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

21